# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-3964

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Linda Ray Gardner, | * | |
| | * | |
| Defendant - Appellee. | * | |

———————

Submitted: September 14, 2004
Filed: February 4, 2005

———————

Before LOKEN, Chief Judge, BEAM and GRUENDER, Circuit Judges.

———————

LOKEN, Chief Judge.

A jury convicted Linda Ray Gardner of conspiring to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 846. The district court granted Gardner's motion for a new trial, concluding that the prosecutor made an inadvertent but nonetheless improper comment on Gardner's Fifth Amendment right not to testify by stating, during rebuttal closing argument, that "there is no evidence that refutes" incriminating testimony by a government witness. The government appeals. We have jurisdiction to review an order granting a new trial in a criminal case. See 18

U.S.C. § 3731. We conclude that the prosecutor's statements were not improper and therefore reverse.

## I. The Governing Legal Principles.

It is well established that "the Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." Griffin v. State of California, 380 U.S. 609, 615 (1965). To warrant a new trial on this ground, the defendant must demonstrate that a prosecutor's comment was both improper and prejudicial to the defendant's substantial rights. United States v. Moore, 129 F.3d 989, 993 (8th Cir. 1997), cert. denied, 523 U.S. 1067 (1998). The Supreme Court reviews *de novo* whether the prosecutor has unconstitutionally commented on the defendant's failure to testify. See United States v. Robinson, 485 U.S. 25, 31-34 (1988); accord Pollard v. Delo, 28 F.3d 887, 889 (8th Cir.) ("how the prosecutor's statements may be characterized is a mixed question of law and fact, which we review under a de novo standard"), cert. denied, 513 U.S. 1003 (1994). The district court's grant of a new trial is then reviewed for abuse of discretion. See United States v. Glantz, 810 F.2d 316, 320 n.2 (1st Cir.), cert. denied, 482 U.S. 929 (1987).

The government argues that the prosecutor's comments during rebuttal argument were neither improper nor prejudicial.[1] We apply the rule in Griffin to both direct and indirect comments on a defendant's failure to testify. When the prosecutor has neither directly commented on the defendant's silence, nor demonstrated an intent

[1]Gardner argues that the government waived the impropriety issue in the district court when the prosecutor said during a hearing on the new trial motion, "Your Honor, I agree that the comment was improper, and I apologize." We disagree. Because the court ruled that the statement was improper during trial, the post-trial apology is best viewed as a bow to reality. The government then argued that the statements were not improper in its subsequent post-hearing brief, and on appeal.

to draw attention to that silence, the issue is whether "the jury would *naturally and necessarily* understand the comments as highlighting the defendant's failure to testify." Herrin v. United States, 349 F.3d 544, 546 (8th Cir. 2003) (emphasis added), cert. denied, 124 S.Ct. 2832 (2004). Comments must be evaluated in the context of the entire closing arguments and the evidence introduced at trial. See United States v. Smith, 266 F.3d 902, 906 (8th Cir. 2001).

## II. The Evidence in Question.

The government's principal witness, Terry McGee, testified that he and Gardner became partners in distributing methamphetamine in the Beebe, Arkansas area north of Little Rock. McGee testified that Gardner came to his home late one night in early March 1998 to ask if she could leave with McGee eight to ten pounds of methamphetamine she had recently acquired from her Mexican suppliers in California. McGee agreed, and Gardner asked him to separate one of the "best-looking pounds" for her, to be retrieved later. McGee separated two pounds, putting one in a bag he marked "Linda," and the other in a bag he marked "Terry," for himself. A few days later, police executed a search warrant on McGee's home and seized the methamphetamine that McGee had not yet sold, including the two bags marked "Linda" and "Terry." These bags were admitted into evidence during Gardner's trial. Though McGee was extensively cross-examined, he was asked very few questions about the one pound he put in a bag marked "Linda."

McGee testified that, while Gardner was at his home delivering the load of methamphetamine, he called Barbara Shumake, one of his customers who "had been asking me about getting possibly five pounds or more." Shumake expressed interest in the new load and was in McGee's home inspecting the methamphetamine when the warrant search took place. Neither side called Ms. Shumake as a witness.

McGee further testified that Gardner sought him out when he was released on bond three days after the warrant search. Gardner told McGee she had come to his house while the police were there but "just kept on going" down the road. Gardner said she owed her Mexican suppliers for the methamphetamine she had left with McGee, and they wanted evidence it had been seized. A day or two later, McGee met with Gardner and two of the Mexicans, who said that Gardner owed them $120,000. The group discussed how they might recoup their losses through further drug sales.

Another important government witness, Ruby Eastep, testified that Gardner came to her trailer and said she had left a load of methamphetamine with McGee to sell, but when she went back to collect money from McGee, "the place was surrounded and the police were there." Eastep described Gardner as "very upset" "because she owed her Mexicans in California quite a bit of money." Eastep was not cross-examined about this part of her extensive testimony. Another government witness, Debby Stacy, whose boyfriend had drug dealings with McGee, testified that Gardner once said she went to McGee's house, saw several police cars, and left. Stacy was not cross-examined about this incident.

Government witness Linda Taylor testified that she used methamphetamine with Linda Gardner, and each bought an "eightball" from the other on at least one occasion. There was no cross-examination directed to whether Ms. Taylor might be the "Linda" whose name appeared on the one-pound bag marked by Terry McGee.

The defense called nine witnesses, presenting evidence that Gardner's lifestyle did not match that of a big-time drug dealer, and that she was a responsible mother of three, a good employee, and extremely poor during the relevant time period. No defense witness addressed McGee's testimony regarding the March 1998 transaction or the warrant search of his home. Gardner did not testify.

## III. Closing Arguments, Jury Instructions, and Grant of a New Trial.

Prior to closing arguments, the district court gave its final instructions to the jury, which included the following: "There is no burden upon the defendant to prove that she is innocent. Accordingly, the fact that the defendant did not testify must not be considered by you in any way, or even discussed, in arriving at your verdict."

During closing argument, defense counsel stated: "The biggest problem in this case is, there has never been one bit of evidence that has ever been directly linked to Linda Gardner. And think about this: Linda Taylor, Ruby Eastep, Terry McGee. . . . Every one of them . . . has gotten busted at some point, even if it's with a half a gram of meth. . . . But yet Linda Gardner has been importing and distributing multi pounds of meth and has never been caught with so much as a gram on her? What's the chances of that, if she was really doing it?" The prosecutor then offered the following response during rebuttal, pointing to the bag marked "Linda":

> Now, Mr. Wyatt said that there was no dope that was directly linked to Ms. Gardner. Well, sure there is. It's right here: Linda.
>
> You haven't heard any evidence from the defense whatsoever -- and I want to emphasize, it is our burden of proof to show that she committed the crime that she is charged, but there is nothing, there is no evidence that refutes the testimony that Terry McGee gave that he separated out two pounds of methamphetamine--
>
> [DEFENSE COUNSEL]: Your Honor, I object and ask to approach [the bench].
>
> \* \* \* \* \*
>
> THE COURT: I'm inclined to think it's improper. There was only one person that could refute it, which is the defendant.

The court denied Gardner's mistrial motion but gave the following cautionary instruction to the jury: "Ladies and gentlemen, I'm instructing you to disregard the last statement of the prosecution about no refutation of certain evidence. Disregard it." After over four hours of deliberation, the jury found Gardner guilty of conspiracy to distribute methamphetamine. The defense moved for a new trial, arguing (among other grounds not at issue on appeal) that the prosecutor had improperly commented on the defendant's failure to testify.

After post-trial argument and briefing, the district court granted Gardner a new trial. The court explained that, while the prosecutor's comment was inadvertent, it "definitely 'sounded like' a comment on the defendant's failure to testify -- not like an argument that the defense failed to present evidence in support of its theory of the case." The court concluded that the argument was prejudicial, despite the court's cautionary instruction, because the instruction did not encompass all of the prosecutor's improper statements.

## III. Discussion.

At trial, the district court sustained defense counsel's objection and instructed the jury to disregard the prosecutor's "last statement." But in its written post-trial order granting Gardner's motion for new trial, the court expanded that ruling. "It was not just 'the' last statement, but the last three or four statements that violated the rule against commenting on the defendant's decision to be silent." The expanded ruling was error. The "last three or four statements" included the prosecutor pointing at the bag of methamphetamine marked "Linda" and saying, "Now, Mr. Wyatt said that there was no dope that was directly linked to Ms. Gardner. Well, sure there is. It's right here: Linda." That was proper rebuttal to defense counsel's closing argument. By no stretch of the imagination could this rebuttal reasonably be construed as a comment on Gardner's decision not to testify.

The prosecutor's next statement was, "You haven't heard any evidence from the defense whatsoever," to which the prosecutor added a postscript emphasizing the government's burden of proof. This comment was not improper. In general, "the government may comment on the failure of the defense, as opposed to the defendant, to counter or explain the evidence [unless] the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." United States v. Guzman, 781 F.2d 428, 432 (5th Cir.) (quotation omitted), cert. denied, 475 U.S. 1143 (1986); see United States v. Johnson, 713 F.2d 633, 651 (11th Cir. 1983), cert. denied, 465 U.S. 1081 (1984). Here, the jury heard testimony from nine defense witnesses, but none was questioned about the bag of methamphetamine marked "Linda." Thus, there is no basis for inferring that the jury would naturally and necessarily construe a reference to no evidence "from the defense" as an indirect comment on Gardner's failure to testify.

That leaves "the last" and most controversial comment: "there is no evidence that refutes the testimony that Terry McGee gave that he separated out two pounds of methamphetamine." Although a comment in closing argument that the government's evidence was unrefuted, uncontradicted, or unexplained may constitute an indirect comment on the defendant's failure to testify, the issue requires an analysis of the trial evidence and the context in which the comment was made. For example, in Lockett v. Ohio, 438 U.S. 586, 595 (1978), the Supreme Court concluded that the prosecutor's repeated references to the State's evidence as "unrefuted" and "uncontradicted" were not improper because, during trial, defense counsel had promised the jury that defendant would be the "next witness," but she did not testify. We have held in more than one case that a prosecutor did not improperly comment on the defendant's failure to testify by asserting in closing argument that the government's evidence was unrefuted or uncontradicted, particularly when the comment was a logical rebuttal to the defendant's closing argument. See Smith, 266 F.3d at 906; Moore, 129 F.3d at 993; United States v. Emmert, 9 F.3d 699, 702-03 (8th Cir. 1993), cert. denied, 513 U.S. 829 (1994). Such a remark is improper only

when the jury would naturally and necessarily take it as a comment on the defendant's failure to testify because no one other than the defendant could have refuted the evidence in question. United States v. Triplett, 195 F.3d 990, 995 (8th Cir. 1999), cert. denied, 529 U.S. 1094 (2000). In this regard, "the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury *necessarily* would have done so." United States v. Grosz, 76 F.3d 1318, 1326 (5th Cir.) (emphasis in original; quotation omitted), cert. denied, 519 U.S. 862 (1996).

The district court properly focused on this question at trial when it sustained defense counsel's objection because, in its view, "There was only one person that could refute [the last statement], which is the defendant." But in so ruling, the court took too narrow a view of both the comment and the evidence, thereby violating the principle that "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974).

In context, this last comment was clearly intended to remind the jury of McGee's explanation of how the bag of methamphetamine came to be marked, "Linda." Because no one else was there when Gardner brought a large quantity of methamphetamine to McGee's home late at night, one interpretation of the comment is that it improperly called attention to the fact that Gardner did not take the stand to deny the meeting took place. But the evidence the prosecutor pointed to was the bag marked "Linda." The critical question was whether that physical evidence belonged to Linda Gardner, as McGee testified. There were many ways the defense could have refuted this testimony, other than by calling Gardner to the stand to deny it.

-- For example, McGee testified that he called Barbara Shumake that night, she expressed an interest in buying a large quantity of methamphetamine, and she was

present in McGee's home when it was raided a few days later. Shumake might have been called as a defense witness to refute McGee's testimony that "Linda" marked on the bag meant that the pound of methamphetamine belonged to or was being held for Linda Gardner. The existence of other relevant witnesses "makes it unlikely that the jury would have viewed the challenged comments as pointing to defendant['s] silence at trial rather than to the lack of evidentiary support for the defense theory." Glantz, 810 F.2d at 323.

-- Another way to refute McGee's testimony would have been to lay a foundation in the cross-examination of methamphetamine user Linda Taylor for the argument that Ms. Taylor was the "Linda" referred to on the bag.

-- Yet another way to refute would have been more focused cross-examination of McGee concerning the bag marked Linda, and aggressive cross-examination of Ruby Eastep and Debby Stacy on their testimony regarding Gardner's conduct during and after the police raid, which tended to corroborate this portion of McGee's testimony.

The defense pursued none of these strategies, relying instead on persuading the jury that McGee (and Eastep) were, in general, not to be believed. In these circumstances, we cannot agree with the district court that the prosecutor's comment that the bag marked "Linda" was unrefuted evidence of Gardner's guilt would "naturally *and necessarily*" be construed by the jury as a comment on her decision not to testify.

There remains the question whether the district court abused its discretion in granting Gardner a new trial. At trial, the district court sustained defense counsel's objection and instructed the jury to disregard the last statement about unrefuted evidence. It was well within the court's discretion to instruct the jury to disregard a comment that came close to the lines drawn by Griffin and its progeny. But after trial, the district court expanded that permissible though erroneous ruling to include

additional comments that in our view were not even arguably improper rebuttal. Then, dismissing the value of curative instructions as "mostly fiction," the court concluded that Gardner should be granted a new trial because of "my failure to give a thorough instruction to disregard." We presume the jury followed the court's instruction to disregard a comment by the prosecutor. See United States v. Flute, 363 F.3d 676, 678 (8th Cir. 2004). Likewise, we presume the jury followed the court's final instruction that Gardner's decision not to testify "must not be considered by you in any way, or even discussed, in arriving at your verdict." The court's disdain for the value of cautionary or curative instructions is contrary to well-established law: "The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process." Richardson v. Marsh, 481 U.S. 200, 211 (1987). In these circumstances, though we give substantial deference to a trial court's exercise of its discretion to grant a new trial, we conclude that the district court's ruling granting a new trial in this case had no valid basis in law or the trial record and was therefore an abuse of its discretion.

The order of the district court dated November 18, 2003, is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

_____