# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2638

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Linda Ray Gardner, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  January 9, 2006
Filed:  May 3, 2006

_____

Before LOKEN, Chief Judge, HANSEN and MELLOY, Circuit Judges.

_____

LOKEN, Chief Judge.

A jury convicted Linda Ray Gardner of conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 846.  The district court granted Gardner's motion for a new trial.  The government appealed, and we reversed.  United States v. Gardner, 396 F.3d 987 (8th Cir.), cert. denied, 126 S. Ct. 153 (2005).  On remand, the district court[1] sentenced Gardner to 120 months in prison.  She appeals, raising three evidentiary issues.  We affirm.

_____

[1]The HONORABLE WILLIAM R. WILSON, Jr., United States District Judge for the Eastern District of Arkansas.

# I.

Ruby Eastep was the first of the government's twenty-three witnesses at trial. Eastep testified that she was a high school classmate of Gardner who began using methamphetamine in 1994 while residing in Merced, California. Eastep purchased the drugs from Mexican suppliers introduced by a friend, Chris Smith. Eastep moved back to Arkansas in 1994 and began supplying local distributors, including Gardner. Eastep testified that she made twenty-four trips between California and Arkansas in the next two or three years, each time delivering Gardner between a quarter-pound and two pounds of methamphetamine.

Early in her direct examination Eastep testified that she brought Chris Smith to Arkansas during this period and that Gardner's sister, Tina Spears, introduced Smith to Gardner. Defense counsel objected to this testimony as inadmissible hearsay. See Fed. R. Evid. 802. The government argued it was testimony excluded from the definition of hearsay and admissible as "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Following the procedure approved by this court, the district court conditionally admitted the testimony as a coconspirator statement and then found at the end of the trial that the government had demonstrated by a preponderance of the evidence "(1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." United States v. Bell, 573 F.2d 1040, 1043 (8th Cir. 1978). On appeal, Gardner argues that the district court abused its discretion in admitting this testimony because Smith's introduction to Gardner was not "in furtherance of" the conspiracy. She argues that the testimony was prejudicial hearsay because it linked her to a methamphetamine broker from California.

Later in her direct examination, Eastep testified that she went to California in 1996 to buy five pounds of methamphetamine for Gardner and another Arkansas

distributor. While there, Eastep had a falling out with Smith and his Mexican supplier, and they refused to supply Eastep with methamphetamine. Later, Eastep telephoned Gardner, who said that Smith had already called and would directly supply her. Thereafter, Eastep was "cut out of the middle," and Gardner purchased directly from Smith and his Mexican suppliers. Gardner's statement to Eastep was not hearsay; it was an admission by a party admissible under Rule 801(d)(2)(A) of the Federal Rules of Evidence. It was also far more prejudicial to Gardner's defense than the earlier statement by Spears that she introduced Smith to Gardner two years previously. The introduction provided relevant background because it explained how Smith knew to call Gardner and offer to supply her directly. But Gardner's 1996 statement that Smith would be supplying her directly was admissible without the background statement by Spears.

In general, statements by coconspirators concerning their distribution of drugs or their efforts to recruit other conspirators are admissible as in furtherance of the conspiracy. See United States v. Sanchez-Berrios, 424 F.3d 65, 74-75 (1st Cir. 2005), cert. denied, 126 S. Ct. 1105 (2006); United States v. Mickelson, 378 F.3d 810, 820 (8th Cir. 2004); United States v. Ortiz-Martinez, 1 F.3d 662, 674 (8th Cir.), cert. denied, 510 U.S. 936 (1993). Here, even if Spears's statement that she introduced Smith to Gardner, standing alone, was only marginally "in furtherance of" the conspiracy, any error was harmless because other admissible testimony established that Smith directly supplied Gardner with methamphetamine. See United States v. Lopez, 384 F.3d 937, 942 (8th Cir. 2004), cert. denied, 126 S. Ct. 1078 (2006); United States v. Mitchell, 31 F.3d 628, 632 (8th Cir. 1994).

Gardner further argues that this testimony violated her Sixth Amendment Confrontation Clause rights because the government failed to demonstrate that the declarant, Tina Spears, was unavailable. This argument is based upon outdated Eighth Circuit decisions. See United States v. DeLuna, 763 F.2d 897, 909-10 (8th Cir. 1985); United States v. Massa, 740 F.2d 629, 638-39 (8th Cir. 1984). Those decisions were

overruled in <u>United States v. Inadi</u>, 475 U.S. 387, 391 (1986), where the Supreme Court held that the Confrontation Clause does not require "a showing of unavailability as a condition to admission of the out-of-court statements of a nontestifying co-conspirator, when those statements otherwise satisfy the requirements of Federal Rule of Evidence 801(d)(2)(E)." <u>See</u> <u>also</u> <u>Bourjaily v. United States</u>, 483 U.S. 171, 182-83 (1987); <u>United States v. Reyes</u>, 362 F.3d 536, 540-41 (8th Cir.), <u>cert.</u> <u>denied</u>, 542 U.S. 945 (2004).

## II.

Government witness Mazda Rasasy testified that he began delivering methamphetamine from California to Gardner in Arkansas after Smith became Gardner's supplier. Rasasy testified that he initially drove the shipments to Arkansas, but his superior told him to fly the drugs to Arkansas after an encounter with law enforcement. Rasasy then transported the drugs on Southwest Airlines flights between Sacramento and Little Rock. Toward the end of its case in chief, the government introduced a Southwest Airlines document showing that numerous flight reservations were made in Rasasy's name in the year 2000, including flights originating or ending in California and Little Rock. The document was authenticated by the testimony of Lisa Stewart, a Southwest Airlines records custodian. The district court overruled Gardner's relevancy objection to this evidence.

On appeal, Gardner argues the evidence was irrelevant because it failed to show "who made the reservations, whether any of the reservations were actually used, whether they were for round-trip or one-way travel, or whether Little Rock was ever a final destination." But the evidence was relevant as that concept is defined in Rule 401 of the Federal Rules of Evidence. The numerous airline reservations in Rasasy's name were some support for his testimony that he was serving as a drug courier by air that year. The uncertainties noted by Gardner -- which defense counsel effectively established on cross-examination -- went to the weight of the evidence, not its

admissibility. See Contemporary Mission, Inc. v. Famous Music Corp., 557 F.2d 918, 927 (2d Cir. 1977). The district court did not abuse its discretion by admitting this relevant evidence.

## III.

The government presented evidence connecting Gardner with "Ace," a debt collector the Mexican suppliers sent to Arkansas from time to time. The first witness to establish the connection was Eastep, who testified:

> Q: Now, you've testified about someone that you knew as Ace. Where did you see Ace?
> A: At Linda's, Linda Gardner's house.
> Q: How many times have you seen Ace at Linda Gardner's house?
> A: Several times. He stayed there for a few weeks when he was there.
> Q: Do you remember approximately when that was?
> A: 2001, I believe.

Gardner objected and moved for a mistrial, arguing that testimony to events in 2001 was improper because it was outside the period charged in the indictment, which alleged a conspiracy "in or about 1994 through in or about 2000." The district court observed that it was "discretionary with the Court" to allow evidence beyond the dates of the alleged conspiracy. The court then denied the motion for a mistrial, struck Eastep's testimony as to 2001, and said it would instruct the jury to disregard the testimony if Gardner requested that instruction. Gardner declined. Following Eastep's unexpected reference to 2001, the government made no further inquiry into events after 2000 with any witness.

On appeal, Gardner argues that the court abused its discretion in denying her motion for a mistrial. See United States v. Hollins, 432 F.3d 809, 812 (8th Cir. 2005) (standard of review). Gardner cites no authority establishing that the testimony was

improper, much less grounds for a mistrial. As a general matter, the government ventures into dangerous territory when it offers evidence of similar wrongdoing outside the alleged conspiracy period. Such evidence may be excludable under Federal Rules of Evidence 404(b) and 403. It is reversible error if it constructively amends the indictment by creating a substantial likelihood the defendant will be convicted of an uncharged offense. Or it may be a material variance, changing the evidence but not the charge, in which case its admission is reversible error if the defendant is prejudiced. See United States v. Johnston, 353 F.3d 617, 623 (8th Cir. 2003), cert. denied, 541 U.S. 1068 (2004).

In this case, Eastep did not testify to wrongdoing by Gardner in 2001. To be sure, the innocuous reference to an event in 2001, if pursued by the government in greater detail, would have raised an inference that the conspiracy lasted beyond the period alleged in the indictment. At some point, that variance could become material. But the district court avoided the danger by striking Eastep's first unanticipated reference to 2001 and by offering the defense a curative instruction. There was no further reference to events in 2001, and substantial testimony by later witnesses linked Gardner and Ace during the period alleged in the indictment. Accordingly, even if Eastep's vague reference to an event in 2001 was improper, the district court did not abuse its discretion in denying Gardner's motion for a mistrial. Compare United States v. Cole, 380 F.3d 422, 427 (8th Cir. 2004).

The judgment of the district court is affirmed.

_____