STATE of North Dakota, Plaintiff
and Respondent,

v.

Donald MARMON and Vernon Thomas
Ruckle, Defendants and Appellants.

Cr. No. 337.

Supreme Court of North Dakota.

Sept. 19, 1967.

Helgi Johanneson, Atty. Gen., Bismarck, Q. R. Schulte, State's Atty., Stanley, and Theodore Kellogg, Sp. Asst. Atty. Gen., Dickinson, for plaintiff and respondent State.

Ella Van Berkom, Minot, for defendants and appellants.

STRUTZ, Chief Justice (on reassignment).

The defendants were charged with commission of the crime of grand larceny of livestock under the provisions of Section

12–40–03(3), North Dakota Century Code, and were found guilty by a jury. They appealed from the judgment of conviction.

A review of the facts reveals that the defendants, Marmon and Ruckle, together with one Harry Eustis, who also was charged with the crime of grand larceny but not tried with the defendants herein, had gone out at night and had shot a young beef belonging to one Lee Addicott, a neighbor of the defendant Marmon. The defendants allege that they had gone out to shine deer and, as they were driving along one of the back roads, they had seen a deer; that they turned around and drove back to where they had seen the animal, saw some eyes shining in the darkness, and, thinking the animal was the deer, the defendant Ruckle had shot at the eyes. When they went to where the animal had fallen, they found that it was a young beef. Defendants assert that, rather than leave the carcass to spoil, they bled it and put the meat in the pickup they were driving. The defendant Ruckle, with Eustis, then started for Williston, where they intended to put the carcass in the cooler until they could find its owner.

The animal which they had killed belonged to Lee Addicott, defendant Marmon's neighbor, and it bore Addicott's brand and earmark. The record discloses that the defendant Marmon had helped Addicott with the branding of his cattle and that he was acquainted with Addicott's brand.

On the way to Williston, defendant Ruckle and Eustis were stopped by game wardens who suspected that shining of deer was taking place in the breaks along the White Earth Creek in Mountrail County. A search of their vehicle disclosed the carcass of the animal which they had killed, together with knives, a cleaver, and other instruments used in killing and skinning the beef.

After having been stopped by the game wardens, the defendant Ruckle, with Eustis, continued on to Williston where they stopped at Ruckle's home, parking the vehicle on the street. Here they were apprehended by the sheriff and members of the Williston police force. When they were halted by the officers, the defendant Ruckle stated that the animal belonged to Eustis. He then changed his story and stated that they had purchased the animal in New Town. He later admitted that this, too, was false, and his explanation for telling these falsehoods was that he wanted to give the defendant Marmon an opportunity to contact the owner of the animal, who was believed to be a person living in Minot.

Ruckle and Eustis were taken to the State's Attorney's office where they were interrogated in the presence of the defendant Ruckle's attorney. In the State's Attorney's office, the defendant Ruckle related that the three of them had been out shining deer; that he had shot at a pair of eyes which had appeared in the beam from the headlights of their car, supposing the animal to be a deer, but that, on investigation, they discovered that he had shot a domestic animal.

Subsequent to the meeting and interrogation in the State's Attorney's office, Ruckle and Eustis took the officers to a remote area in Mountrail County where the head and the entrails of the animal which had been killed had been dumped into a deep ravine. They also helped the officers locate the hide, which had been placed in a burlap sack, weighted with rocks, and sunk in the backwaters of the Garrison Reservoir. Before disposing of the hide, they had cut out the brand, and this portion of the hide never was recovered.

The morning following the killing of the animal, the defendant Marmon called on one Vincent Cowley in Minot. The contention of the defendants was that they thought the animal which they had killed was one belonging to Cowley, who had cattle located in the general area where this animal had been shot. Defendant Ruckle testified that defendant Marmon had believed the animal killed belonged to Cowley

and had said that he would go to see Cowley in Minot the following morning and report its killing. Testimony was then offered through Cowley as to what Marmon had told him when he went to Minot to report the killing of the animal. When the State's objections to these statements were sustained by the trial court, the defendants made an offer of proof, by such witness, that defendant Marmon had gone to Cowley the morning following the killing of the animal and informed him that the defendants had shot one of his cattle, and offered to pay for it; that Cowley subsequently investigated and found that he had not lost an animal; and that Cowley's investigation was based on what he had been told by Marmon.

This offer of proof was denied on the ground that Cowley's proposed testimony was based on self-serving declarations made to him by defendant Marmon and that such statements, made the day following the shooting of the animal, were not a part of the res gestae.

It was during the examination of the defendants' witness Cowley that an incident occurred which the defendants contend was prejudicial error, and on which they place much stress on this appeal. Cowley was asked whether he had had any conversation with the defendant Marmon on the morning following the killing of the animal, as to whether one of his animals was missing. One of the attorneys for the State objected to this question as immaterial, incompetent, hearsay, and self-serving, and then added:

"If Mr. Marmon has any statement he should get up on the stand himself."

On this record, the jury returned a verdict of guilty against the defendants, Ruckle and Marmon. Their appeal to this court raises several issues which we will consider in the following order:

1. Should the court have granted a mistrial on the motion of the defendants at the time the attorney for the State referred to the fact that the defendant Marmon could take the witness stand if he wanted to produce certain evidence?

2. Was the reference to Harry Eustis, without calling him as a witness, prejudicial error as to the defendants?

3. Is the evidence sufficient as to the defendant Marmon to sustain the verdict of guilty?

4. Did the defendants receive a fair trial?

Our statute provides that the neglect or refusal of a defendant to testify shall not create or raise the presumption of guilt against him. The law further provides that such neglect or refusal to testify shall not be referred to by the prosecuting attorney or considered by the court or jury before whom the trial is held. Sec. 29-21-11, N.D. C.C. Thus our law specifically prohibits the prosecution from making any reference to the failure of a defendant to take the stand.

The United States Supreme Court has held that comment to the jury by a prosecutor in a State criminal trial upon the defendant's failure to testify as to matters which he can reasonably be expected to deny or explain, because of facts within his knowledge, violates the self-incrimination clause of the Fifth Amendment to the Federal Constitution. Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed. 2d 106 (1965).

Thus, even if North Dakota did not have a statute specifically prohibiting the prosecution from commenting on the defendant's failure or neglect to testify, such comment would be in violation of the Fifth Amendment to the Federal Constitution, as now interpreted by the United States Supreme Court, and would be reversible error. The question now is: Was the statement by the prosecuting attorney in this case a comment on the failure of the defendant to take the stand? The statement which is claimed to be objectionable was made during the examination of one of the defendants' wit-

nesses, Vincent Cowley. The defendant Marmon was attempting to establish that, on the day after the alleged crime, he was endeavoring to find the owner of the animal which the defendants had killed and dressed. He knew that the witness Cowley had cattle in the general area of the county where this animal had been killed and, to establish that the defendants were not trying to get away with the animal, when they discovered that they had shot a beef instead of a deer, he tried the following day to learn if perchance Cowley had lost an animal. Mr. Cowley was asked by the defendants' attorney:

"Q. Did you have a conversation there with Mr. Marmon?

"A. Yes, I did.

"Q. Did this conversation, did he state anything to you concerning any of your animals?"

To this question, the State objected on the ground that it was immaterial, incompetent, hearsay, and self-serving. The prosecutor then added:

"If Mr. Marmon has any statement, he should get up on the stand himself."

Thereupon the defendants moved for a mistrial. In the colloquy which followed, out of the hearing of the jury, the prosecuting attorney stated that the evidence was inadmissible in the manner in which it was being offered and that he objected to its being produced in that manner.

Most of the cases which hold that statements of the prosecution referring to the neglect or failure of a defendant to take the stand constitute prejudicial error, refer to statements made by the State in argument to the jury. The defendant has the right to go on the stand, or to refuse to take the stand, and his failure to testify cannot be pointed out in the argument to the jury. Here, however, the State had no knowledge as to whether the defendant would or would not take the stand. The defendant Ruckle had already testified, and

there is nothing in the record which would indicate that the State knew that the defendant Marmon would or would not take the stand. Thus the objectionable statement obviously was not a statement made for the purpose of drawing the jury's attention to the fact that the defendant Marmon had not taken the stand. Counsel for the parties were engaged, in apparent good faith, in discussing an entirely different proposition, the admissibility of statements made by the defendant himself to a friend the day following the alleged crime. The evidence was not offered to corroborate testimony given by the defendant that he had had such a conversation. In discussing the admissibility of this evidence, the prosecution incidentally mentioned that this evidence could be introduced by the defendant himself. This was at a time when the prosecution did not know whether the defendant would or would not take the stand.

California's State Constitution provides that in any criminal case, whether the defendant testifies or not, his failure to explain or to deny any evidence or facts in the case against him may be commented upon by the court and by counsel, and may be considered by the court or the jury. Art. 1, Sec. 13, Cal. State Constitution.

In a recent murder trial in that State, the State's Attorney in his argument to the jury, referred to the defendants' failure to testify. The trial court also instructed the jury that it could draw adverse inferences from the defendants' failure to testify. Both defendants were convicted. Their convictions were affirmed by the California Supreme Court, the court finding that, although in the light of the decision of the United States Supreme Court in Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, such comment was error because it denied the defendants a Federal constitutional right, the error was harmless under the harmless-error provision of the California State Constitution. The United States Supreme Court reversed the conviction, however,

holding that before an error affecting the constitutional rights of an accused can be held to be harmless, the reviewing court must be able to declare its belief that such error was harmless beyond a reasonable doubt. Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, (1967).

In the case before us, the alleged reversible error consisted of the statement by the prosecuting attorney during the examination of defendants' witness Cowley:

"If Mr. Marmon has any statement, he should get up on the stand himself."

So far as the record discloses, there was no way, at that point in the trial, for the State to know whether or not the defendant Marmon would testify. The language of the prosecuting attorney was not a comment on the failure of the defendant to take the stand, made after the defense had rested and while the State was presenting its final argument to the jury, but was a comment on the admission of certain evidence presented by defendants.

A recent case squarely in point is that of United States v. Bruzgo, 373 F.2d 383, decided February 10, 1967, by the United States Court of Appeals, Third Circuit. In that case, the admissibility of certain evidence was being objected to by the United States Attorney. After making his objection, the prosecuting attorney stated:

"If defense counsel wants that testimony when his case in chief comes up let him put his defendant on the stand and testify."

The defendant contended that this was reversible error. The trial court, immediately upon the making of this statement, told the jury that the remarks of Government counsel would be stricken, and admonished the jury not to pay any attention to the statement. On appeal, the Circuit Court unanimously held that the prosecutor's statement, made while objecting to a question on cross-examination of a prosecution witness, that if the defendant's counsel wanted certain evidence he could put the defendant on the stand, was not incurably prejudicial and, even though improper, was not reversible error in view of the trial court's corrective action.

In the case before us, immediately after the conference in chambers, the trial court took the following action:

"Members of the jury, before this last recess and before a Motion for Dismissal was made, a statement was made by Mr. Kellogg, State's attorney, which I am now striking from the record. I am reminding you again which I have before anything that is ordered stricken from the record is not to be considered any way shape or form by you jurors in the deciding of the case."

As in the case of United States v. Bruzgo, supra, at the time the statement was made, there was no way of knowing whether the defendant would testify. The language of the prosecutor thus was not a comment on the failure of the defendant to take the stand, made after the defendant had rested or while the prosecutor was making his closing address to the jury. As the court stated in Bruzgo, the language of the prosecutor was not a challenge to the defendant to take the stand; the statement that "if defense counsel wants that testimony" was regarded by the court as a slip by the prosecuting attorney in the course of a heated trial, and not incurably prejudicial.

In this case, the prosecuting attorney said:

"If Mr. Marmon has any statement, he should get up on the stand himself."

We could never expect to have a trial where, in the heat of argument, some statement that is improper will not be made. We never will reach perfection in the trial of a lawsuit. The statement of the prosecutor, Kellogg, in this case, was not prejudicial and was not reversible error in view of the corrective action taken by the

trial court when it advised the jury that the statement was stricken and that the jury should not consider the statement in arriving at a verdict.

The trial court also covered this matter in its instructions to the jury, as follows:

"The defendant in a criminal case may or may not testify in his own behalf as he elects. His failure to do so is not even a circumstance against him, and no presumption of guilt should be indulged in by you on account of his failure to so testify in his own behalf. You should not mention, discuss, or even refer to such fact or allow it to influence you in any manner in arriving at your verdict."

This instruction was proper, even in the absence of a specific request that it be given. The trial court had advised the defendants that the jury would be instructed that it could not consider, one way or the other, the fact that the defendant Marmon had not taken the stand, and the defendants agreed to this, defendants' counsel stating:

"You will, I assume, add to that the further instruction that it may not be commented upon either?"

This court has held that it is not error to instruct the jury, even in the absence of a request, that failure of the defendant to testify does not create or raise a presumption of guilt against him. State v. Simpson, 78 N.D. 571, 50 N.W.2d 661.

 We therefore hold that the prosecuting attorney's statement while objecting to certain evidence, that if the defendant wanted that evidence he should get on the stand himself, did not constitute reversible error in view of the court's corrective action and the instruction given to the jury. Such remark did not amount to a comment on the defendant's failure to testify and was not prejudicial. The statute forbidding comment on failure of an accused to testify cannot be construed

to prevent the State from making proper objection to proposed evidence which the prosecutor deems inadmissible. We find that, under all of the circumstances as shown by the record, the statement of the prosecutor was harmless in view of the admonition by the trial court.

The next issue raised by the appellants is whether the assertion by the State's Attorney, in his opening statement to the jury, that, "Through Mr. Eustis, the State will prove that the defendants were implicated in the crime and that they did shoot, kill, butcher and skin this critter"; thus advising the jury what Mr. Eustis would testify to, but failing to call him as a witness later, was error. The appellants contend that this was error and prejudicial to their rights.

 The purpose of an opening statement is to inform the jury what the case is all about and to outline to it the proof which the State expects to present, so that the jurors may more intelligently follow the testimony as it is presented. In such statement, counsel for the State should outline what he intends to prove, and it is not necessary that he name the witnesses who will present each bit of evidence. In outlining his proposed case, counsel should be allowed considerable latitude. Only where the prosecutor deliberately attempts to misstate the evidence will such opening statement be ground for reversible error. Where, as in this case, the prosecutor outlines the State's evidence, the failure to present such evidence by a particular witness he may name does not constitute prejudicial or reversible error in the absence of a showing of bad faith or a deliberate attempt to misstate the facts.

 The scope of the opening statement rests largely in the discretion of the trial court, and this court will not reverse a conviction on the ground that the opening statement was prejudicial unless there is a clear abuse of that discretion.

The State's Attorney in the case before us stated in his opening statement that the State would prove that the defendants did shoot, kill, butcher, and skin the animal in question. The purpose of this statement was to inform the jury what offense the defendants were charged with, not to inform it of the witnesses by whom the charges against the defendants would be established. The circumstances outlined by the State's Attorney in his opening statement were all established by the evidence in this case. The mere fact that they were proved by witnesses other than the one the State had intended to call to establish such proof is wholly immaterial. The fact that Mr. Eustis was not called does not amount to bad faith on the part of the State, nor is it an attempt to misstate the evidence. We find no prejudicial error in the opening statement of the State complained of by the defendants.

The defendant Marmon also contends that the evidence as against him is based entirely upon the uncorroborated testimony of the defendant Ruckle, an accomplice, and that such evidence is insufficient to support his conviction.

Our law specifically provides that the uncorroborated testimony of an accomplice, standing alone, will not support a conviction. Sec. 29–21–14, N.D.C.C.; State v. Kellar, 8 N.D. 563, 80 N.W. 476, 73 Am.St.Rep. 776.

However, every material fact testified to by an accomplice need not be corroborated. State v. Marcovitz, 63 N.D. 458, 248 N.W. 481.

Corroboration may be furnished by facts which tend to connect the defendant with the commission of the offense. State v. Foster, 69 N.D. 428, 287 N.W. 517.

We have examined the record in this case and we find ample evidence, other than the testimony of the defendant Ruckle, an accomplice, to connect the defendant Marmon with the offense charged. We need only point to the corroboration by defendants' own witness, Cowley. It is true that his testimony regarding the statements made to him by Marmon, on objection, were not permitted in evidence. But this witness did testify as to a visit by Marmon when he called at the witness's place of employment in Minot, the day following the killing of the animal, and inquired whether any of Cowley's cattle were missing; that, as a result of such visit, the witness made an investigation of his own cattle in Mountrail County and found none of them missing.

Thus, from the record in this case, we find that there is evidence, other than the evidence secured from the accomplice, Ruckle, to connect the defendant Marmon with the offense charged. Every material fact testified to by an accomplice need not be corroborated if there is evidence other than the testimony of the accomplice which tends to connect the defendant with the offense.

The next issue to be considered is that the evidence as against both defendants is insufficient to establish intent on their part to steal the animal which they are charged with stealing. This contention is wholly without merit. The evidence discloses that the defendants shot the animal, butchered and skinned it, cut off the brand so as to destroy evidence of its ownership, attempted to do away with the hide by sinking it in the backwaters of the Garrison Reservoir, and then deliberately told false stories to the investigating officers. We have carefully examined the entire record, and we find that it is sufficient to reasonably justify the finding of guilty by the jury as to both defendants.

The final issue raised on this appeal is that the trial court erred in permitting the State to inquire into the activities of the juvenile court in regard to the children of the defendant Ruckle. The record shows that this defendant had testified, on direct examination, that he was living with his family of children in Bowman, North Da-

kota On cross-examination, he was then asked:

"Q. And you say you are living with your family?

"A. How?

"Q. You are living with your family?

"A. Yes.

"Q. Now?

"A. My children, yes.

"Q. Well, wasn't your family taken from you by the juvenile authorities?"

At this point, the defendant objected to the question, which objection was overruled by the court. The defendant then was asked:

"Q. Wasn't your family, your children, taken from you by the juvenile authorities?

"A. Absolutely not."

After the denial by the defendant that his children had been taken from him, no further questions were asked along this line, and the matter was not pursued or again referred to. The defendant now contends that the mere asking of the question was reversible error.

 The defendant had testified that he was living with his children. A question propounded to him on cross-examination as to whether his children had been taken from him by the juvenile authorities would not be reversible error, where the defendant denied that the children had been taken from him and where the matter was not pursued.

 The alleged error in asking the defendant whether his children had been taken from him by juvenile authorities does not involve any constitutional rights of the defendant. Before a conviction will be reversed because of an error not involving constitutional rights of a defendant, it must appear from the record that the error was prejudicial and that it caused substantial injury to the defendant's case, and that a different decision probably would have resulted if the error had not occurred.

 Thus, whether the claimed error is prejudicial depends upon whether, on review of the entire evidence, it can be said that the jury could reasonably have reached a contrary verdict if the claimed error had not been committed. We find that merely asking the defendant, who had stated on direct examination that he was living with his children, whether the children had been taken from him by juvenile authorities, was not reversible error. The defendant denied that the children had been taken from him, and the matter was not alluded to again. We do not find that the asking of this question was error. But, if it had been, this court has often held that not every error committed by the court is prejudicial, for, to be prejudicial, the error must be such that in all probability it had some effect upon the jury's verdict. State v. Manning (N.D.), 134 N.W.2d 91. The purpose of reviewing a judgment in a criminal action is not to determine whether the record is perfect, but to determine whether the defendant has had a fair trial under the law and whether his conviction is based upon evidence establishing his guilt beyond a reasonable doubt. Only when the appellate court can say that the error assigned in all probability did adversely affect the jury's verdict will it be held to be prejudicial. Merely asking a question which might be improper does not constitute reversible error, for, if we so held, no criminal trial would ever be completed without error.

A review of the record in this case discloses that the defendants have had a fair trial under the law, and that their convictions are based upon competent evidence establishing their guilt beyond a reasonable doubt. We find no reversible error.

For reasons stated herein, the judgment of conviction is affirmed.

TEIGEN, ERICKSTAD, KNUDSON and PAULSON, JJ., concur.