2009 ND 44

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Moe Maurice GIBBS, Defendant and Appellant.**

No. 20070378.

Supreme Court of North Dakota.

April 2, 2009.

Bradley Allen Cruff (argued), State's Attorney, Valley City, ND and Jonathan R. Byers (appeared), Assistant Attorney General, Bismarck, ND, for plaintiff and appellee.

Kent M. Morrow (argued), Bismarck, ND, for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Moe Maurice Gibbs appeals from a criminal judgment entered after a jury found him guilty of murder. Gibbs argues (1) the State failed to provide him with adequate financial resources for necessary experts for his defense, (2) the prosecution's statements during the State's case-in-chief and during closing arguments constituted improper comment on his right not to testify, (3) the district court's refusal to allow the jury to hear and see law enforcement's pre-arrest videotaped interview of him violated the doctrine of completeness and (4) the State failed to introduce sufficient objective evidence for the jury to convict him. We affirm.

I

[¶ 2] At about 9:00 p.m. on September 13, 2006, Valley City State University student Mindy Morgenstern was found dead in her off-campus apartment. Morgenstern was found inside the front door of her apartment with a cloth belt around her neck, a slit throat and two kitchen knives next to her body. Pine Sol had been poured over her upper torso and face. George Mizell, the state forensic examiner, determined the cause of Morgenstern's death was "incised wound of neck/asphyxia."

[¶ 3] There were no signs of forced entry into Morgenstern's apartment and no known witnesses to her death. Morgenstern was last seen at the university campus where she logged off a school computer at 12:23 p.m. on September 13. Morgenstern's apartment was minutes from the campus, and she failed to answer a cell phone call from a friend at 12:47 p.m. Law enforcement officials testified they believed Morgenstern was killed between 12:45 p.m. and 1:30 p.m. on September 13. There were no usable fingerprints on the knives found by Morgenstern's body, and an analysis of deoxyribonucleic acid ("DNA") on the knives excluded Gibbs as a contributor of that DNA. Both an analysis of DNA on rubber gloves found in Morgenstern's apartment and a mitochondrial DNA analysis of a piece of hair found in

her left hand excluded Gibbs as a contributor. However, DNA analysis of scrapings and clippings from Morgenstern's fingernails on her left hand matched a profile of Gibbs' DNA. A DNA analysis from the fingernail clippings resulted in 41.2 nannograms of DNA, with 30.8 nannograms matching Gibbs' DNA profile and the remainder matching Morgenstern's DNA profile. A DNA analysis of the scrapings from Morgenstern's fingernails indicated a 2 to 1 ratio of Gibbs' DNA to Morgenstern's DNA. A DNA analysis of a spot on Morgenstern's shirt indicated that Gibbs could not be excluded as a contributor of that DNA.

[¶ 4] At the time of Morgenstern's death, Gibbs was employed as a jailer for Barnes County, and he and his wife and fifteen-month-old stepdaughter lived in the same apartment complex as Morgenstern. On the morning of Morgenstern's death, Gibbs took his wife and stepdaughter to lunch, dropping his wife off at work between 12:20 p.m. and 12:30 p.m. Gibbs received a text message from his wife at 12:33 p.m. asking him to bring her something to drink at work, and his wife testified he brought her something to drink at her job, which was minutes from their apartment.

[¶ 5] On September 20, 2006, law enforcement officials conducted a videotaped interview of Gibbs lasting approximately two and one-half hours. Law enforcement officials testified that during the videotaped interview, Gibbs acknowledged he had helped Morgenstern carry laundry into her apartment about ten days earlier; however, he repeatedly denied killing Morgenstern. There was evidence Gibbs had a gouge on the back of his left hand and a scratch on his right hand, which were consistent with fingernail scratches. There was testimony that Gibbs claimed he cut his left hand on September 14, 2006, while moving boxes from his apartment to his in-laws' house and that he scratched his right hand on September 15, 2006, while putting his stepdaughter in a car seat.

[¶ 6] At the conclusion of the September 20, 2006 videotaped interview, the State arrested Gibbs and charged him with murdering Morgenstern. Gibbs initially retained counsel, and his trial was moved to Minot because of pretrial publicity. *See Forum Commc'ns Co. v. Paulson*, 2008 ND 140, 752 N.W.2d 177. At that trial, Gibbs did not testify or call any witnesses, and the jury deadlocked on a verdict. Gibbs thereafter asserted he was indigent, and counsel was appointed to represent him. At a second jury trial in Bismarck in October and November 2007, Gibbs did not testify, but presented evidence through four witnesses, including Leo Worner, a computer expert; Dr. Thomas Edwards, an expert in image analysis and enhancement; and Marc Taylor, a DNA expert. The jury found Gibbs guilty of murder.

[¶ 7] Gibbs moved for a new trial in December 2007. Although there is no transcript of a hearing on Gibbs' motion for a new trial and no contemporaneous written order denying the motion, the parties do not dispute that the district court orally denied Gibbs' motion for new trial at a December 17, 2007 sentencing hearing. Gibbs subsequently appealed from the judgment. No transcript of the sentencing hearing was ordered; however, the record includes a September 26, 2008 written order denying Gibbs' motion for a new trial.

## II

[¶ 8] Gibbs argues he was not given an opportunity to participate meaningfully in his trial because he was not provided adequate funding to retain necessary experts for an effective defense. He claims he was not able to retain the services of Dr. Michael Baden, a prominent forensic pa-

thologist, to counteract the State's forensic pathologist, because the North Dakota Commission on Legal Counsel for Indigents would pay only one-half of Baden's reduced retainer. Gibbs also claims he was not able to retain two forensic DNA experts to testify on his behalf, essentially permitting the State to argue its three experts' testimony against his one expert's testimony. Gibbs argues the nature of this case was a battle of the experts and the availability of a forensic expert for his defense was one of the basic tools of an adequate defense.

[¶ 9] In *State v. Gonderman*, this Court explained the State's obligation to ensure an indigent defendant has a meaningful chance to present a defense:

> "When a State brings criminal charges against an indigent defendant, it must take steps to ensure that the accused has a meaningful chance to present a defense. *See, e.g., Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Although a State need not provide an indigent defendant with all the tools that a wealthier counterpart may buy, it must provide an indigent defendant with the 'basic tools of an adequate defense.' *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400, 403 (1971). *See State v. Valgren*, 411 N.W.2d 390 (N.D.1987) [where indigent defendant had adequate alternatives to discovery depositions of police officers and eye witnesses to arrest, defendant was not denied access to raw materials integral to an effective defense].

> "In *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), a capital case, the United States Supreme Court held that when an indigent defendant makes a preliminary showing that mental capacity at the time of an alleged offense is likely to be a significant factor at trial, that defendant has a federal due process right to have the State provide access to a psychiatrist's assistance on that issue. Under *Ake, supra*, 470 U.S. at 77, 105 S.Ct. at 1093, indigent defendants do not have carte blanche to obtain expert assistance; instead, they are entitled to expert assistance necessary to afford 'an adequate opportunity to present their claims fairly within the adversary system.' *See State v. Norman*, 507 N.W.2d 522 (N.D.1993) [indigent defendant not entitled to a second psychiatric evaluation at public expense]."

531 N.W.2d 11, 13 (N.D.1995).

[¶ 10] The North Dakota Commission on Legal Counsel for Indigents has policies for reimbursement of extraordinary expenses. *See* Commission on Legal Counsel for Indigents, Policy on Reimbursement of Extraordinary Expenses. <www.nd.gov/indigents/docs/reimbursementOfExtraordinaryExpenses.pdf> However, "[a] touchstone for an effective appeal on any proper issue is that the matter was appropriately raised in the trial court, so the trial court could intelligently rule on it." *State v. Bell*, 2002 ND 130, ¶ 9, 649 N.W.2d 243. "A party must object at the time the alleged error occurs, so the trial court may take appropriate action if possible to remedy any prejudice that may have resulted." *Id.*

[¶ 11] Here, although Gibbs may have asked the Commission for funds for additional experts, the record does not reflect Gibbs raised this issue in the district court until his motion for new trial. In its written order denying Gibbs' motion for a new trial, the district court said Gibbs did not ask the court for funding for additional experts and, if he had, the court may have granted him some relief. *See* N.D.C.C. § 31–01–19 ("[w]itness for indigent defendants subpoenaed and paid by city, county,

or state under court order in criminal or municipal court action"). The court also said Gibbs failed to provide an adequate record of funding limitations and expenditures and Gibbs was not operating under any funding cap known by his counsel. The record supports the district court's statement that Gibbs did not ask the court for funding for additional experts until his motion for a new trial. We conclude Gibbs failed to timely raise this issue in the district court so that the court could intelligently rule on the issue.

[¶ 12] "When an issue is not preserved for appeal, we may provide limited review of the issue to determine whether obvious error affecting substantial rights has been committed." *State v. Causer*, 2004 ND 75, ¶ 16, 678 N.W.2d 552. *See* N.D.R.Crim.P. 52(b) ("obvious error ... that affects substantial rights may be considered even though it was not brought to the court's attention"). In *State v. Olander*, 1998 ND 50, ¶ 14, 575 N.W.2d 658, this Court said that an appellate court may not notice a claimed error that was not brought to the attention of the trial court unless there is "(1) error, (2) that is plain, and (3) affects substantial rights."

[¶ 13] In denying Gibbs' motion for a new trial, the district court also explained that the alignment of the expert witnesses for each party was not one sided. The court said Dr. Rick Staub was an independent DNA expert retained by agreement between the State and Gibbs, Dr. Mohamed Sedqi was a State-retained DNA expert whose testimony about mitochondrial DNA from a hair found in Morgenstern's left hand was of little or no value to either party, Hope Olson was the Director of the North Dakota State Crime Lab who testified to the results of testing conducted in the ordinary course of her duties, Marc Taylor was Gibbs' DNA expert, and Dr. Michael Bourke was the State's DNA expert. "[I]ndigent defendants ... are entitled to expert assistance necessary to afford 'an adequate opportunity to present their claims fairly within the adversary system.'" *Gonderman*, 531 N.W.2d at 13 (quoting *Ake*, 470 U.S. at 77, 105 S.Ct. 1087). The record in this case does not suggest Gibbs' experts were disproportionately outnumbered by the State's experts. We conclude Gibbs' claimed error for inadequate funding for experts does not rise to the level of obvious error.

### III

[¶ 14] Gibbs argues the prosecution's statements during the State's case-in-chief and during closing argument to the jury, constituted improper comment on his Fifth Amendment right to remain silent and to not testify at trial. Gibbs claims the cumulative effect of the prosecution's statements violated his Fifth Amendment rights, and viewed in the context of the entire trial and the evidence, the statements were not harmless beyond a reasonable doubt.

[¶ 15] "'[I]t is a fundamental principle of constitutional law that a prosecutor may not comment on a defendant's failure to testify in a criminal case.'" *State v. Scutchings*, 2009 ND 8, ¶ 9, 759 N.W.2d 729 (quoting *State v. Myers*, 2006 ND 242, ¶ 7, 724 N.W.2d 168). *See also Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *State v. His Chase*, 531 N.W.2d 271, 273 (N.D. 1995); *State v. Flohr*, 310 N.W.2d 735, 736 (N.D.1981). "This right emanates from the criminal defendant's privilege against self-incrimination. U.S. Const. Amend. V; Art. I, [§ ]12, N.D. Const.; N.D.C.C. [§ ]29–21–11." *His Chase*, at 273.

### A

[¶ 16] During Gibbs' counsel's cross-examination of Dale Maixner, an agent for

the Bureau of Criminal Investigation, Gibbs' counsel asked Maixner about statements made by Gibbs during the videotaped interview:

Q. And [Gibbs] wasn't concerned about your accusations, that you were making, was he?

A. He wasn't concerned at all.

Q. In fact, he could—he told you more than once, you and the other agents, you can talk until you're blue in the face.

MR. CRUFF: Objection, Your Honor. Hearsay.

THE COURT: Overruled. Go ahead.

MR. FISHER: (continuing)

Q. He said more than once, 'You can talk until you're blue in the face and it's not going to change my statement that I wasn't there and I didn't have anything to do with this murder.' Isn't that right?

A. Yes, and that's what I'd expect from a street smart person.

Q. Well, that wasn't part of the question. I ask that it be stricken. Now, let me ask you another question. When you were confronting . . .

THE COURT: Do you wish to have it stricken?

MR. FISHER: Sir?

THE COURT: Do you . . .

MR. FISHER: Just the last part of it about what he discussed.

THE COURT: The jury will disregard the answer will be stricken, that portion of it.

MR. FISHER: (continuing)

Q. Now, when he said in his estimation.

MR. CRUFF: Objection, Your Honor, hearsay. The defendant is available to the defense—

MR. FISHER: Judge.

MR. CRUFF:—to testify.

MR. FISHER: That is an improper objection and he can not make statements like that and I'd ask you to admonish him.

THE COURT: Yeah. That's an improper objection. Overruled. Next question.

MR. CRUFF: Can we take this up outside the hearing of the jury, your Honor, please?

[¶ 17] After argument by counsel outside the presence of the jury, the court denied Gibbs' motion for a mistrial and instructed the jury:

THE COURT: Okay. Members of the jury I'm going to tell you three things.

Number one. In the trial of a criminal action before any court of this state, the defendant is a competent witness and may choose to testify. A defendant who chooses not to testify during the trial does not create or raise any inference of guilt by mere silence.

Number two. The questions and comments of counsel as asked are not evidence. The evidence that you are to consider consists of the testimony of the witnesses, the exhibits received and you'll apply those against the law.

The third that I give you in the instructions. And the third thing that I advise you is that the defendant has entered a plea of not guilty. He's presumed to be innocent until the contrary is established beyond a reasonable doubt.

And that cloak of innocence carries through with him all the way to the time that you start your deliberations and in the jury room while you are deliberating.

[¶ 18] During the State's redirect examination of Agent Arnie Rummel, the prosecution asked Rummel if his testimony

was a "characterization of [Gibbs'] testimony" from the videotaped interview. Gibbs objected to the reference to his "testimony." After argument by counsel outside the presence of the jury, the court denied Gibbs' motion for a mistrial and instructed the jury:

> THE COURT: Members of the jury, there was a comment about testimony by the defendant. The defendant has given no testimony at any time. He's not required to give any testimony at any time. And the fact that he does not testify cannot be held against him.
>
> No inference can be drawn relative to the fact that he does not take the witness stand. And you will not draw any inference from the fact that he does not take the witness stand if that is in fact the case during this trial.

[¶ 19] This Court has recognized that a "prosecutor does not comment on the defendant's failure to testify if the statement is made before the defendant has an opportunity to testify." *His Chase*, 531 N.W.2d at 273 (comment during prosecution's opening statement). *See Flohr*, 310 N.W.2d at 736–37 (statement during prosecution's voir dire); *State v. Nordquist*, 309 N.W.2d 109, 119–20 (N.D.1981) (statement during prosecution's voir dire); *State v. Marmon*, 154 N.W.2d 55, 59–60 (N.D.1967) (statement during prosecution's objection to testimony by defendant's witness).

[¶ 20] In *Marmon*, during the examination of one of the defendant's witnesses, the prosecution objected to a question by defense counsel and said, "If [the defendant] has any statement, he should get up on the stand himself." 154 N.W.2d at 60. The district court gave the jury curative instructions and denied the defendant's motion for a mistrial. *Id.* This Court recognized that most cases dealing with prosecution statements to a jury involve statements during argument to the jury,

but the prosecution's statement in that case was made when the prosecution did not know whether the defendant would or would not take the stand. *Id.* This Court cited *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), for the principle "that before an error affecting the constitutional rights of an accused can be held to be harmless, the reviewing court must be able to declare its belief that such error was harmless beyond a reasonable doubt." *Marmon*, at 60–61. This Court held the comment was not incurably prejudicial, was not reversible error and was harmless under the circumstances of that case:

> "We could never expect to have a trial where, in the heat of argument, some statement that is improper will not be made. We never will reach perfection in the trial of a lawsuit. The statement of the prosecutor . . . in this case, was not prejudicial and was not reversible error in view of the corrective action taken by the trial court when it advised the jury that the statement was stricken and that the jury should not consider the statement in arriving at a verdict.
>
> . . . .
>
> "We therefore hold that the prosecuting attorney's statement while objecting to certain evidence, that if the defendant wanted that evidence he should get on the stand himself, did not constitute reversible error in view of the court's corrective action and the instruction given to the jury. Such remark did not amount to a comment on the defendant's failure to testify and was not prejudicial. The statute forbidding comment on failure of an accused to testify cannot be construed to prevent the State from making proper objection to proposed evidence which the prosecutor deems inadmissible. We find that, under all of the circumstances as shown by the record,

the statement of the prosecutor was harmless in view of the admonition by the trial court."

*Id.* at 61–62.

▆▆▆ [¶ 21] Here, in preliminary instructions, the district court informed the jury:

"The Defendant is presumed to be innocent until the contrary the Defendant's guilt is proved beyond a reasonable doubt. If the State has not proved the Defendant's guilt beyond a reasonable doubt, you must find the Defendant not guilty.

"The jury must bare [sic] in mind that the Defendant does not have to testify, offer any witnesses or other evidence because of the State's burden.

. . . .

"An attorney is an officer of the court. It is an attorney's duty to present evidence on behalf of his client or her client to make objections he or she considers proper. And to argue fully his or her clients cause.

"However, the argument or other remarks of an attorney, except admissions and stipulation noted in the course of the trial, must not be considered by you as evidence.

"If counsel or I make any comments or statements concerning the evidence which you find are not warranted by the evidence, you should wholly disregard them and rely upon your own recollection or observation.

"If counsel make any statements as to the law which are not warranted by these instructions, you should wholly disregard those statements.

"The opening statements and the closing arguments of counsel are intended to help you in understanding the evidence, apply the law and in determining the facts. But they are not evidence."

In response to Gibbs' objections, the district court immediately gave the jury a cautionary instruction about Gibbs' right not to testify at trial. A jury is generally presumed to follow curative instructions. *E.g., State v. Skarsgard,* 2007 ND 160, ¶ 16, 739 N.W.2d 786. The prosecution's comments about "the defendant [being] available to the defense . . . to testify" and Gibbs' "testimony" were made at a time when Gibbs had not yet exercised his right not to testify. As in *Marmon,* those statements were not incurably prejudicial, and we conclude those statements by the prosecution were harmless beyond a reasonable doubt and not reversible error in view of the timing of the statements and the immediate curative instruction by the district court.

### B

[¶ 22] During the State's closing argument, the prosecution argued there was "no explanation" for evidence about Gibbs' DNA on Morgenstern and there was "no explanation" for lack of activity on his cell phone and computer accounts during the time when the State contended Morgenstern was killed:

"The time line that was prepared by Law Enforcement in this matter. From the time he awoke in the morning. 10:30. Busy, busy, busy, busy, busy, busy, busy. Even when he is with his wife and stepdaughter having lunch and running errands there is activity.

Come 12:30 that day, 12:34 it stops. And as you can see on the rest of the boards, there is very little activity until about three o'clock when he's on line with Yahoo. Then it takes a break. Relatively quiet again until it picks up later that evening.

Highly, highly uncharacteristic for him. With no explanation. It's just a coincidence.

Ability. Dr. Mizell, the State Medical Examiner, testified that yes, it wouldn't take a whole lot for someone to put those knives in Mindy's neck and cut them. But she was already unconscious. Anybody of limited physical ability can do that.

But not just anybody can take and strangle somebody, obviously against their will. They are struggling. They are fighting back. And to do that with minimum defensive injuries to the victim.

Dr. Mizell stated that Mindy might have—did have a minimal bruising that occurred around the time of her death. It could have been incurred during the struggle. And minimal injuries to him. Mr. Gibbs, a couple scratches was all that was found a week later.

Not just anybody can choke the life out of somebody in seconds or minutes. And the biological material. Again, it's the calling card.

There has been discussion about whether it was his blood or not blood. Whether invisible DNA is pervading Mindy's fingernails. And that's her blood or makeup or dirt.

Whether the reddish brown spot on her shirt just happens to be a coincidence that that's Mindy's blood. And that the same spot that she smeared defendant's DNA.

You are the people that have to decide whether that's fact or fiction. Whether what's under Mindy's fingernails, the remaining half of the fingernails that you saw was blood.

Independent examiner hired by both of us and the defense team. Not taking sides in this matter. Looked at those fingernails and said it looks like blood to me. The same with the reddish brown spot on Mindy's shirt. Is that coincidence that the DNA and the blood are in the same spot at the same time and there is no explanation as to whose blood it is other than defendant's. Because Mindy did not have blood on her arms.

MR. BREDAHL: Judge, may we approach, please?

THE COURT: Yes, you may."

[¶ 23] After argument by counsel outside the presence of the jury, the court denied Gibbs' motion for a mistrial and declined to give a cautionary instruction, stating it had already "given several cautionary instructions. Including the fact that argument is not evidence. I don't feel that there has been a burden shifting at this point. And it's simply argument. So no further instruction will be given."

[¶ 24] During the State's rebuttal argument, the State argued there was no "logical explanation" for the presence of Gibbs' DNA on Morgenstern:

"Defendant had changing stories as to where he got the scratches. Who was there when he got the scratches. He had a changing story as to when he may been in that apartment. Whether it was one day prior to three to seven days prior.

We have shown that there is no logical explanation for the presence of the DNA on the areas that it was found. We're going to talk more about that."

[¶ 25] In *Scutchings*, we recently addressed issues about a defendant's failure to testify in the context of a prosecutor's comments during closing arguments:

"Under the *Griffin* [*v. State of Cal.*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)] rule, a 'comment to the jury by a prosecutor in a State criminal trial upon the defendant's failure to testify as to matters which he can reasonably be expected to deny or explain, because of facts within his knowledge, violates the

self-incrimination clause of the Fifth Amendment to the Federal Constitution.' *State v. Marmon,* 154 N.W.2d 55, 59 (N.D.1967); *see also State v. Ebach,* 1999 ND 5, ¶ 15, 589 N.W.2d 566 ('A comment on the silence of a defendant is an improper comment on the right to remain silent in violation of the Fifth and Fourteenth Amendments of the Constitution'). The *Griffin* rule applies to indirect as well as direct comments on a defendant's failure to take the witness stand. *See, e.g., Hovey v. Ayers,* 458 F.3d 892, 912 (9th Cir.2006); *United States v. Gardner,* 396 F.3d 987, 989 (8th Cir.2005); *United States v. Moore,* 917 F.2d 215, 224 (6th Cir.1990). We review de novo a claim of a constitutional rights violation. *Myers,* at ¶ 7.

"In *State v. Nordquist,* 309 N.W.2d 109, 119 (N.D.1981) (quoting *United States v. Whitehead,* 618 F.2d 523, 527 (4th Cir.1980)), this Court adopted the following test to use in determining whether a particular comment is an impermissible encroachment upon a defendant's right against self-incrimination: ' "Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify[?]" ' We consider the comments 'in the context in which they were made.' *State v. Skjonsby,* 319 N.W.2d 764, 787 (N.D.1982).

"Generally, '[a] statement that certain evidence is uncontroverted or unrefuted or uncontradicted does not constitute a comment on the accused's failure to testify where the record indicates that persons other than the accused could have offered contradictory testimony.' *Pollard v. State,* 552 S.W.2d 475, 477 (Tex. Ct.Crim.App.1977); *see also State v. Blackman,* 201 Ariz. 527, 38 P.3d 1192, 1210 (Ct.App.2002) ('The State may comment that facts in the case are uncontra-

dicted unless the defendant is or appears to be "the only one who could explain or contradict the evidence offered by the state." ') (internal citation omitted). However, it is well established that a prosecutor's comment that the government's evidence is uncontradicted or unrebutted is improper and violates the *Griffin* rule if the only person who could have rebutted the evidence was the defendant testifying on his or her own behalf. *See, e.g., United States v. Snook,* 366 F.3d 439, 444 (7th Cir.2004); *United States v. Mietus,* 237 F.3d 866, 871 (7th Cir.2001); *Runnels v. Hess,* 653 F.2d 1359, 1363 (10th Cir. 1981); *People v. Harrison,* 35 Cal.4th 208, 25 Cal.Rptr.3d 224, 106 P.3d 895, 927 (2005); Annot., *Comment or argument by court or counsel that prosecution evidence is uncontradicted as amounting to improper reference to accused's failure to testify,* 14 A.L.R.3d 723, § 4 (1967), and cases collected therein."

2009 ND 8, ¶¶ 9–11, 759 N.W.2d 729.

[¶ 26] In *Scutchings,* the defendant did not testify and did not call any witnesses for his defense to a charge of felony corruption or solicitation of a minor. 2009 ND 8, ¶¶ 1, 3, 759 N.W.2d 729. During closing arguments, the prosecutor argued:

"The witnesses that you heard from yesterday are the State's witnesses. The Defendant has no constitutional burden to testify. The only thing you can consider are the State's witnesses and any cross-examination by the defense counsel. What do you have to refute [the victim's] testimony? Nothing. There's no reasonable doubt in this case."

*Id.* at ¶ 5. Under the circumstances in *Scutchings* where the defendant did not

testify and rested without calling any witnesses, we held the prosecution's improper comment on Scutchings' failure to testify made during closing argument was not harmless beyond a reasonable doubt and constituted reversible error. *Id.* at ¶¶ 1, 15.

[¶ 27] Here, the prosecution's argument about "no explanation" and "no logical explanation" referred to the state of the evidence about Gibbs' phone and computer records and his DNA found on Morgenstern. Although Gibbs did not testify at trial, he presented testimony and evidence through his witnesses about the DNA analysis and about his electronic records. In the context of the evidence presented in this case, the prosecution's statements were not of such character that the jury would naturally and necessarily take them to be a comment on Gibbs' failure to testify. Rather, we believe a fair and natural reading of the prosecution's statements in the context of the evidence presented at trial refer to the witnesses called by Gibbs to provide explanations for his electronic records and the DNA analysis and do not naturally and necessarily refer to him as the only person who could have rebutted the State's evidence. We conclude the prosecution's statements during closing arguments were not improper comments about Gibbs' right not to testify.

### IV

[¶ 28] Gibbs argues the district court violated the doctrine of completeness under N.D.R.Ev. 106 and erred in refusing to play to the jury a redacted videotape of law enforcement's interview of him. He claims the court's failure to allow the videotape to be played to the jury allowed the State to mislead the jury with out-of-context excerpts of what investigators recalled Gibbs saying during the videotape. He argues the court's failure to allow the videotape to be played to the jury was particularly significant because the jury asked to view the videotaped interview of him during deliberations.

[¶ 29] Rule 106, N.D.R.Ev., provides:

"Whenever a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which in fairness ought to be considered contemporaneously with it."

[¶ 30] Rule 106, N.D.R.Ev., is not a rule of admissibility; rather, the rule deals with the order of proof to alleviate "the misleading impression created by taking matters out of context" and addresses "the inadequacy of repair work when delayed to a point later in the trial." N.D.R.Ev. 106, Explanatory Note (quoting 1 *Weinstein's Evidence* 106–2). The rule embodies a standard of fairness. *See State v. Weatherspoon*, 1998 ND 148, ¶ 9, 583 N.W.2d 391; *Kunnanz v. Edge*, 515 N.W.2d 167, 170 (N.D.1994).

[¶ 31] Here, the State examined Agent Maixner and Detective Mark McDonald about statements made by Gibbs during the videotaped interview without introducing or playing the videotape itself. A redacted version of the videotape had been played at Gibbs' first trial, and the district court refused to require the State to play the videotape in this trial, but allowed Gibbs to use a transcript from the first trial to cross-examine Agent Maixner and Detective McDonald about statements made by Gibbs during the videotaped interview. The court did not preclude Gibbs from using the transcript from the first trial to cross-examine the law enforcement officials, and the court ruled the playing of the videotaped interview would be duplicative and cumulative.

[¶ 32] A district court has discretion under N.D.R.Ev. 403 to exclude evidence that is cumulative. *See State v. Tibor*, 2007 ND 146, ¶ 31, 738 N.W.2d 492; *State v. Wiest*, 2001 ND 150, ¶ 10, 632 N.W.2d 812. This Court also reviews a district court's decision regarding N.D.R.Ev. 106 under the abuse-of-discretion standard. *Weatherspoon*, 1998 ND 148, ¶ 10, 583 N.W.2d 391. *See* N.D.R.Ev. 106, Explanatory Note ("standard of fairness gives the trial court wide discretion under this rule, which accords with the powers of a trial court to regulate the mode and order of proof"). " 'A [district] court abuses its discretion if it acts in an arbitrary, capricious, or unreasonable manner, or if it misinterprets or misapplies the law.' " *Overboe v. Brodshaug*, 2008 ND 112, ¶ 7, 751 N.W.2d 177 (quoting *Filler v. Bragg*, 1997 ND 24, ¶ 9, 559 N.W.2d 225). " 'A [district] court acts in an arbitrary, unreasonable, or unconscionable manner when its decision is not the product of a rational mental process by which the facts and law relied upon are stated and considered together for the purpose of achieving a reasoned and reasonable determination.' " *Overboe*, at ¶ 7 (quoting *Beaudoin v. South Texas Blood and Tissue Ctr.*, 2005 ND 120, ¶ 33, 699 N.W.2d 421).

[¶ 33] Whether we review this issue under the rule of completeness or under N.D.R.Ev. 403, we conclude the district court's decision about the videotape was the product of a rational mental process by which the facts and law relied upon were stated and considered together for the purpose of achieving a reasoned and reasonable determination. We therefore conclude the court did not abuse its discretion in refusing to require the State to play the redacted videotaped interview during its case-in-chief and in allowing Gibbs to use the transcript from the first trial to cross-examine the law enforcement officials about statements made during the interview.

V

[¶ 34] Gibbs argues the presence of minuscule amounts of his DNA at the crime scene was insufficient objective evidence to convict him of murder. He claims the small amount of DNA was the result of a secondary transfer from a laundry basket or other object.

[¶ 35] Our standard of review for challenges to the sufficiency of the evidence is well established:

"In an appeal challenging the sufficiency of the evidence, we look only to the evidence and reasonable inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant the conviction. A conviction rests upon insufficient evidence only when, after reviewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could find the defendant guilty beyond a reasonable doubt. In considering a sufficiency of the evidence claim, we do not weigh conflicting evidence, or judge the credibility of witnesses. A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts. A conviction may be justified on circumstantial evidence alone if the circumstantial evidence has such probative force as to enable the trier of fact to find the defendant guilty beyond a reasonable doubt. Moreover, a jury may find a defendant guilty even though evidence exists which, if believed, could lead to a not guilty verdict."

*State v. Bertram*, 2006 ND 10, ¶ 5, 708 N.W.2d 913 (quoting *State v. Noorlun*, 2005 ND 189, ¶ 20, 705 N.W.2d 819).

[¶ 36] Viewing the evidence in a light most favorable to the State, we conclude there is evidence supporting a reasonable inference of guilt. There was evidence of DNA underneath Morgenstern's fingernails on her left hand matching a profile of Gibbs' DNA. The State presented evidence that the amount of Gibbs' DNA found under Morgenstern's fingernails was consistent with "fairly vigorous physical contact," such as a struggle or an athletic event and was not from a secondary transfer of DNA. There was evidence of a gouge on Gibbs' left hand and a scratch on his right hand, which were consistent with fingernail scratches. There was also DNA evidence from a spot on Morgenstern's shirt, which did not exclude Gibbs as the contributor of that DNA and which indicated the DNA was from "Gibbs or his patrilineal relative." Gibbs was a resident of the same apartment complex as Morgenstern, and there was evidence he regularly used a cell phone and computer, but he did not use his cell phone or computer when the State claimed Morgenstern was killed. "In assessing claims about the sufficiency of the evidence, we do not weigh conflicting evidence or judge the credibility of witnesses." *Bertram*, 2006 ND 10, ¶ 12, 708 N.W.2d 913. Under our deferential standard of review of claims about sufficiency of the evidence, we conclude sufficient circumstantial evidence existed for the jury to find Gibbs guilty of murder.

### VI

[¶ 37] We affirm the judgment.

[¶ 38] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.