1998 ND 148

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Greg WEATHERSPOON, Defendant and Appellant.**

**Criminal No. 970334.**

Supreme Court of North Dakota.

Aug. 18, 1998.

John P. Van Grinsven, III, Assistant State's Attorney, Minot, for plaintiff and appellee.

Thomas Keith Schoppert, Minot, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Greg Weatherspoon appealed a judgment of conviction entered upon a jury verdict finding him guilty of gross sexual imposition in violation of N.D.C.C. § 12.1–20–03, which prohibits a sexual act or a sexual contact with a victim less than fifteen years old. We conclude Weatherspoon has failed to demonstrate reversible error in his trial, and we affirm.

[¶ 2] When she finished the school-year in Williston in May 1996, the complainant stayed in Weatherspoon's Minot home for a few weeks. She left Minot on June 22, 1996, and returned to her Williston home on June 23, 1996. The complainant told her mother she had missed her menstrual period and her parents took her to Mercy Hospital for a

pregnancy test on July 17, 1996. The test was negative.

[¶ 3] The complainant's parents told a nurse, Patricia Reese, the complainant had been raped on June 21, 1996. Reese called the Williston Police Department. Officer Owens talked with the complainant and sent a report to the Minot Police Department. Detective Kukowski of the Minot Police Department investigated the matter. Kukowski arranged for the complainant to see Dr. Anne Cadwalader. The complainant told Cadwalader Weatherspoon had sexual intercourse with her. Cadwalader examined the complainant and testified her findings were "consistent with trauma of sexual intercourse."

[¶ 4] Weatherspoon was charged with gross sexual imposition. At the jury trial, the complainant testified that on June 21, 1996, Weatherspoon put his penis inside her vagina for two minutes and ejaculated with his penis in his hand. Weatherspoon testified he did not have sex with the complainant. The jury found Weatherspoon guilty, and he appealed.

I

[¶ 5] Weatherspoon contends the trial court erred in not allowing testimony about the results of a polygraph examination and in allowing Detective Kukowski's offer, and Weatherspoon's acceptance of the offer, of a polygraph examination to be redacted from a tape recorded statement and transcript of the recorded statement.

[¶ 6] Generally, "admission of evidence tending to establish that an accused had been willing or unwilling to take a lie detector test is improper." Annotation, *Propriety and prejudicial effect of comment or evidence as to accused's willingness to take lie detector test*, 95 A.L.R.2d 819, 821 (1964). As we noted in *Healy v. Healy*, 397 N.W.2d 71, 74 n. 1 (N.D.1986), this court has addressed the admissibility of polygraph evidence:

In *State v. Pusch*, 77 N.D. 860, 46 N.W.2d 508 (1950), this court held that the results of a polygraph examination are not admissible in a criminal trial. *See also State v. Swanson*, 225 N.W.2d 283 (N.D.1974). However, where the prosecution and de-

fense have stipulated to the admissibility of polygraph test results for the purposes of a motion for new trial, we have held that the court must consider the results in determining the merits of the motion. *State v. Yodsnukis*, 281 N.W.2d 255 (N.D.1979); *State v. Olmstead*, 261 N.W.2d 880 (N.D.), *cert. denied*, 436 U.S. 918, 98 S.Ct. 2264, 56 L.Ed.2d 759 (1978).

In *State v. Newnam*, 409 N.W.2d 79, 87 (N.D.1987), this court held "the trial court did not abuse its discretion in excluding the results of the polygraph examinations from evidence," when the defendant "did not offer any scientific evidence of the reliability of results of polygraph examinations." Similarly, in *State v. Swanson*, 225 N.W.2d 283, 285 (N.D.1974), this court upheld the trial court's refusal to accept evidence of the defendant's willingness to take a polygraph test when "[t]here was little evidence offered concerning the scientific reliability and acceptance of the polygraph."

[¶ 7] As Weatherspoon has acknowledged, his position has been further undercut by the United States Supreme Court's recent decision in *United States v. Scheffer*, —— U.S. ——, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). Edward Scheffer, an informant for the Air Force Office of Special Investigations (OSI), took a polygraph test administered by an OSI examiner. When Scheffer sought to introduce the polygraph evidence, the military judge excluded it under Mil.R.Ev. 707, which excludes all polygraph evidence, including an offer to take, or a failure to take, a polygraph examination. The Supreme Court said: "The contentions of respondent and the dissent notwithstanding, there is simply no consensus that polygraph evidence is reliable. To this day, the scientific community remains extremely polarized about the reliability of polygraph techniques." *Id.*, 118 S.Ct. at 1265. In deciding Mil.R.Ev. 707 does not unconstitutionally abridge a defendant's right to present a defense, the Supreme Court said: "The approach taken by the President in adopting Rule 707—excluding polygraph evidence in all military trials—is a rational and proportional means of advancing the legitimate interest in barring unreliable evidence." *Id.*, 118 S.Ct. at 1266.

[¶ 8] The parties did not stipulate to the admissibility of any polygraph evidence. Weatherspoon's offer of proof did not present any scientific evidence of the reliability of the results of polygraph examinations. We conclude the trial court did not abuse its discretion in excluding polygraph evidence, either of the results of Weatherspoon's polygraph examination, or in receiving into evidence a recorded statement and transcript of the recorded statement which had been redacted by deleting reference to Kukowski's offer, and Weatherspoon's acceptance of the offer, of a polygraph examination.

## II

■ [¶ 9] Weatherspoon contends the trial court erred in admitting into evidence during the prosecutor's redirect examination of the complainant a recorded statement the complainant made to Detective Kukowski on July 17, 1996. Relying on N.D.R.Ev. 106, the prosecutor offered as an exhibit a transcript of the complainant's statement to Detective Kukowski. Weatherspoon objected on the ground that "[o]nly that portion of the statement, if at all, that the cross-examination was directed to, not the entire statement" should be admitted. Weatherspoon now contends the trial court erred in allowing the statement to be admitted during the prosecutor's redirect examination, instead of at the time Weatherspoon's attorney referred to the statement in his cross-examination of the complainant.

N.D.R.Ev. 106 provides:

Whenever a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction *at that time* of any other part or any other writing or recorded statement which in fairness ought to be considered contemporaneously with it. (Emphasis added).

The Explanatory Note to Rule 106 explains:

Rule 106 requires that the remainder of or related writings or recordings be admitted at the same time as the principal evidence if the trial court determines, in fairness, that this ought to be done. The standard of fairness gives the trial court wide discretion under this rule, which accords with the powers of a trial court to regulate the mode and order of proof, generally, granted by Rule 611.

[¶ 10] Weatherspoon has not shown how the timing of the offer of the exhibit into evidence might have prejudiced him. Only a very short time passed between the initial reference to the transcript of the complainant's interview with Detective Kukowski by Weatherspoon's attorney during cross-examination of the complainant at page 70 of the trial transcript, and the prosecutor's offer of the transcript at page 78 of the trial transcript. We conclude the prosecutor's offer was sufficiently contemporaneous with the cross-examination about the complainant's statement that the trial court did not abuse its discretion in receiving the statement into evidence.

## III

■ [¶ 11] Weatherspoon contends the trial court erred in severely restricting the defense in cross-examining the complainant about her physical condition. This court has held cross-examination of a youthful complainant about her physical condition is proper in a gross sexual imposition trial:

When the prosecutor introduced medical evidence of this youthful complainant's physical condition, the defendant should have been allowed to "provide an alternative explanation for her physical condition" by cross-examining the complainant about her "prior sexual activity tending to show that another person might have been responsible for her condition."

*State v. Reinart,* 440 N.W.2d 503, 505 (N.D. 1989), quoting *People v. Mikula,* 84 Mich. App. 108, 269 N.W.2d 195, 198 (1978).

■ [¶ 12] Thus, the trial court erred in sustaining the prosecutor's objection to questions about the complainant's sexual conduct. Weatherspoon has not asserted the error was one of constitutional dimension. Therefore, "our task is to determine whether the error had a significant impact upon the verdict." *State v. Smuda,* 419 N.W.2d 166, 168 (N.D. 1988). "Reviewing courts must ignore errors that are harmless." *State v. Janda,* 397 N.W.2d 59, 66 (N.D.1986).

[¶ 13] Despite the fact the trial court sustained the prosecutor's objection, Weatherspoon was able to ask a number of questions designed to show someone other than Weatherspoon may have been responsible for the complainant's physical condition. The following colloquy occurred during cross-examination of the complainant by Weatherspoon's attorney:

Q  Did Mr. Kukowski ask you if you have ever had sex with anybody before?

A  I think so.

Q  What—your answer was you never had sex with anybody before?

A  No.

Q  From the time you were gone on June 22nd to July 15th, did you have sex with anybody?

A  No.

Q  Did you have sex with anybody in Montana?

A  No.

Q  Did you have sex with a boy when you went out gold panning in Montana?

A  When I did what?

Q  When you were out gold panning with a young boy in Montana?

A  No. I was, but I didn't have sex with anybody.

The trial court then sustained an objection by the prosecutor. Weatherspoon's cross-examination ended with the following:

Q  ... You are not trying to protect someone else who has done this to you and blamed Greg?

A  No.

[¶ 14] Weatherspoon's counsel also attempted to show someone other than Weatherspoon was responsible for the complainant's physical condition in closing argument to the jury:

Here is a girl that is wanting condoms.... This is a girl who knew what condoms were for. The lack of credibility of her version of events, that has to carry the day.... She said she missed her period because of Greg, who had a vasectomy. Greg, who ejaculated in his hand.

\*     \*     \*     \*     \*     \*

But how about Jason? Usually these people deny the—they make these allegations. They deny it was Jason. They deny it was in Montana with the gold panning. She was with a boy out in Montana. That would have easily put her in the time frame....

She was fascinated with condoms. She wanted Renae to give her condoms. Why would you need condoms unless you were trying to protect somebody else and blame Greg. Rape happens unfortunately, but it is also an excuse for protecting somebody else that she may want to see.

Dr. Cadwalader testified it was consistent with sexual intercourse. I asked Dr. Cadwalader if something is consistent with sexual intercourse, is it also consistent with something else. And you recall the hymen is still intact. She didn't exclude the possibility of manual manipulation or other objects, self-manipulation. And Renae caught her doing something under the blanket. She didn't rip the blanket off and say, "What are you doing." The fact of the matter is she was playing with herself, at least the implication, under the blanket on the couch that she normally sits on.

[¶ 15] Weatherspoon placed before the jury ample evidence and argument attempting to suggest the possibility of someone else being responsible for the complainant's physical condition. Under these circumstances, we conclude the trial court's error in sustaining the prosecutor's objection to repetitious testimony about the complainant's prior sexual activity was harmless.

IV

[¶ 16] Without citing any authority, Weatherspoon contends the trial court erred in allowing evidence, through Reese and Dr. Cadwalader, that counseling had been recommended for the complainant, arguing "[t]reatment has nothing to do with whether there was in fact penetration which is the element of the crime." This court addressed treatment in sexual assault cases in *State v. Janda*, 397 N.W.2d 59, 63 (N.D.1986):

In addition to diagnosing and treating such physical injuries as cuts or bruises, health care providers examining one claiming to

be the victim of a sexual assault must diagnose whether or not the alleged victim has suffered psychological trauma and, if so, its nature and extent, and treat that as well. The intensity of psychological trauma suffered by the victim of a sexual assault may vary, depending upon such things as the location of the attack, the kind and degree of restraint of movement or force used, or the imposition of fear through an assailant's admonition to the victim not to tell anyone. Thus, such matters are "reasonably pertinent to diagnosis and treatment" and statements about them are admissible under Rule 803(4), N.D.R.Ev.

Evidence that health care providers deemed counseling to be necessary or advisable treatment is relevant and admissible in a sexual imposition case. Furthermore, the recommendation for counseling was also shown in an emergency room/outpatient record introduced into evidence without objection. The trial court did not err in admitting the treatment evidence.

V

█ [¶ 17] The transcript of the statement of Weatherspoon to Detective Kukowski contains no responses to some questions that were asked during interrogation. Weatherspoon unsuccessfully requested the following instruction be submitted to the jury:

A person's silence or failure to respond or explain a question to law enforcement can never be held against them nor should you consider that.

[¶ 18] Weatherspooon argues the trial court erred in failing to instruct the jury about the effect of his silence during questioning. Just before the prosecutor offered a transcript of Weatherspoon's statement to Detective Kukowski into evidence, the prosecutor asked Kukowski if he had advised Weatherspoon of his constitutional rights before Weatherspoon spoke to Kukowski. Detective Kukowski explained he had advised Weatherspoon and Weatherspoon had signed a written acknowledgment that he had been informed of and understood his constitutional rights. When the prosecutor offered that

written acknowledgment into evidence, the following colloquy occurred:

MR. SCHOPPERT: Besides, Mr. Kukowski, signing this document he does not have to answer any questions that you propose to him, does he?

THE WITNESS: He does not.

MR. SCHOPPERT: He can also be selective, decide to answer questions he wants to and not answer any other questions, can he not?

THE WITNESS: That is correct.

When the prosecutor offered a transcript of the recorded conversation between Kukowski and Weatherspoon, Weatherspoon objected, arguing the tape should be played. After the trial court overruled Weatherspoon's objection and received the exhibit, the following colloquy occurred:

MR SCHOPPERT: May I see the exhibit? There are no page numbers, are there? Judge, on page 6, drawing the court's attention to this, drawing the court's attention to the question and answer at the bottom, there is no reply—

\*    \*    \*    \*    \*    \*

THE COURT: The exhibit is received. I think you covered that in your voir dire of the witness. He could answer some questions and not all of them.

In talking about the transcript of Weatherspoon's statement to Kukowski in his closing argument, Weatherspoon's attorney told the jury:

In the context of this case Mr. Kukowski asks all of the questions, all the questions. Remember that my client doesn't even have to answer. And questioning that he can terminate at any time. He wasn't— that's what the constitution says Mr. Weatherspoon can do.

[¶ 19] We conclude court and counsel adequately advised the jury about the effect of Weatherspoon's silence during questioning by Kukowski, and there was no reversible error in failing to give Weatherspoon's requested instruction.

## VI

[¶ 20] Weatherspoon contends the trial court should have ordered a mistrial because the prosecutor was allowed to vouch for the non-testing of physical evidence.

[¶ 21] On direct examination by the prosecutor about a pair of the complainant's shorts and panties, Kukowski testified he did not attempt any analysis of the clothing because "it was reported they were washed numerous time." Weatherspoon's attorney objected to that testimony:

> MR. SCHOPPERT: I am going to object. That is hearsay. That is also impeaching the witness. Also introducing facts not in evidence. There is no testimony about any washing.

The trial court sustained the objection.

[¶ 22] In his closing argument, the prosecutor told the jury the clothing had been washed. Weatherspoon unsuccessfully objected, moved for a mistrial, and requested a cautionary instruction:

> MR. SCHOPPERT: I am going to object to that. There is absolutely no evidence that they were washed. He is going outside the record and the Judge sustained that objection. Mr. Kukowski tried to say that. I ask that be struck from the record.
>
> THE COURT: Objection overruled. The jury will remember the testimony.
>
> MR. SCHOPPERT: Just for the record, I move for a mistrial. Just to preserve the record.
>
> THE COURT: Motion denied.
>
> MR. SCHOPPERT: I also ask for a cautionary instruction that the jury disregard that testimony.
>
> THE COURT: Motion denied.

As Weatherspoon's attorney said in objecting to the prosecutor's argument, there was no evidence the clothing had been washed. The argument was, therefore, improper, although, as the trial court recognized, the jury would "remember the testimony."

[¶ 23] "Generally, ..., inappropriate prosecutorial comments, standing alone, do not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *State v. Thiel*, 411 N.W.2d 66, 71 (N.D.1987). We more recently addressed improper argument by a prosecutor:

> "The control of closing arguments is largely within the discretion of the trial court, and we will not reverse on the ground that a prosecutor exceeded the scope of permissible closing argument unless a clear abuse of the trial court's discretion is shown."

*State v. Ash*, 526 N.W.2d 473, 481 (N.D. 1995). "Argument by counsel must be confined to facts in evidence and the proper inferences that flow therefrom." *State v. Kaiser*, 417 N.W.2d 376, 379 (N.D.1987). "On appeal, this court 'must consider the probable effect the prosecutor's [inappropriate comments] would have on the jury's ability to judge the evidence fairly.'" *Grand Forks v. Cameron*, 435 N.W.2d 700, 704 (N.D.1989), *quoting United States v. Young*, 470 U.S. 1, 12, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1, 10 (1985). *City of Williston v. Hegstad*, 1997 ND 56, ¶ 8, 562 N.W.2d 91.

[¶ 24] Weatherspoon's attorney addressed the prosecutor's statement about the clothing being washed at some length in his own closing argument, reminding the jury that the court had sustained his objection to Kukowski's testimony the clothing had been washed and that neither the complainant nor her parents were ever asked if the clothing had been washed. Counsel also advised the jury:

> Remember, the defendant never has the burden in a case. The defendant doesn't have to do anything in our country. The State has to produce the physical evidence. They did not do the testing. You can not only consider the evidence that is put before you, but also the lack of evidence that is not put before you in the form of testing.

From our review of the record, we conclude the prosecutor's improper closing argument about the clothing having been washed could not have affected the jury's ability to judge the evidence fairly, and does not justify reversal of the conviction.

## VII

[¶ 25] Relying on *State v. Smuda*, 419 N.W.2d 166 (N.D.1988), and the

N.D.R.Crim.P. 43(a) requirement that the defendant must be present at every stage of a trial, Weatherspoon contends the trial court erred in allowing the jury to play recorded statements of Weatherspoon in the jury room without him being present. We disagree.

[¶ 26] Weatherspoon's recorded statements were played during the trial and the recordings were offered and received into evidence as exhibits. As this court said in *State v. Janda*, 397 N.W.2d 59, 64 (N.D. 1986), "[t]he simple fact of the matter is that a properly admitted exhibit goes to the jury." A trial court may, in its discretion, preclude certain exhibits from the jury room. *State v. Boehler*, 542 N.W.2d 745, 747 (N.D.1996). However, this court has specifically said "[w]e agree with the reasoning of those jurisdictions which have allowed recordings and slides, along with the mechanical equipment necessary to hear or view the exhibits, to go to the jury room once the evidence is properly admitted." *State v. Halvorson*, 346 N.W.2d 704, 712 (N.D.1984). We conclude the trial court did not abuse its discretion in granting the jury's request for a tape recorder, thereby allowing the jury to play recordings of statements properly admitted into evidence.

## VIII

[¶ 27] The judgment of conviction is affirmed.

[¶ 28] SANDSTROM, NEUMANN, MARING and MESCHKE, JJ., concur.