2010 ND 146

**Tim SORENSON, Petitioner and Appellee**

v.

**Jana SLATER, Respondent and Appellant.**

**No. 20090358.**

Supreme Court of North Dakota.

Aug. 17, 2010.

Kevin J. Chapman, Williston, ND, for petitioner and appellee.

Brenda A. Neubauer, Bismarck, ND, for respondent and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Jana Slater appealed from the district court judgment granting primary custody of her son to Tim Sorenson, the

child's father. We reverse and remand for further findings.

## I.

[¶ 2] On May 11, 2008, a child was born to Slater and Sorenson. The parents were never married. The child lived with Slater following his birth. On May 20, 2008, Sorenson petitioned to establish paternity, child support and medical support. On August 5, 2008, Sorenson moved for an interim order granting him temporary custody of the child. The district court denied the motion on March 25, 2009.

[¶ 3] In November 2008, Sorenson exercised his weekend parenting time with the child and dropped the child off at daycare on a Monday morning. The next day, the parents and child attended a hearing on Sorenson's motion for an interim order for custody. That evening, Slater observed the child appeared to be in pain and took the child to the emergency room. The doctor who treated the child asserted the child had a broken clavicle. On November 20, 2008, Slater filed an ex parte motion to have Sorenson restricted to supervised visitation. The district court issued a temporary order for supervised visitation the same day. At a hearing the next day, the district court received affidavits and heard testimony from the doctor. The doctor testified Slater made comments at the hospital indicating she believed the child's clavicle was broken during his visitation with Sorenson. The doctor believed this was inconsistent with the nature of the injury, as the swelling over the fracture indicated it was a very recent injury. Because Slater's statement was inconsistent with the injury, the doctor filed a report with social services. After an investigation, social services did not require any services, but recommended the parents attend a parenting class. The district court subsequently vacated its temporary order.

[¶ 4] In March 2009, Sorenson moved for the appointment of a guardian ad litem and/or custody investigator. Slater responded that she did not object to the appointment of a custody investigator, but did object to some factual assertions in Sorenson's motion and affidavit. The notice of motion indicates hearing on the motion would be held at the same time as a previously calendared scheduling conference. The record does not reflect the district court's decision on Sorenson's motion, as it appears the scheduling conference was not conducted on the record.

[¶ 5] The district court held trial on Sorenson's petition on July 27 and 28, 2009. The district court heard testimony from the parents, Sorenson's girlfriend, his brother, his brother's girlfriend, Slater's sisters, and her mother. The district court also took judicial notice of the affidavits and testimony submitted regarding Slater's ex parte motion for supervised visitation. Sorenson submitted a proposed parenting plan, asserting it would be in the child's best interests that he exercise primary residential responsibility, subject to Slater's right to scheduled parenting time. Sorenson's proposed parenting plan also explained how the parents would exercise their rights and responsibilities and their decisionmaking responsibility. On September 21, 2009, the district court issued its order. The district court made the following findings regarding the best interests factors:

a. The love, affection, and other emotional ties existing between the parents and the child and the ability of each parent to provide the child with nurture, love, affection, and guidance.

Evidence from each parent and other family members indicate both have the appropriate ties and capabilities. This factor favors neither parent.

b. Parent ability to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.

Both have the ability to assure the child's necessities. The father's home is shown to be a safe environment. No evidence was presented regarding the mother's home. This factor slightly favors the father.

c. Developmental needs of child and the ability of each parent to meet those needs, both in the present and in the future.

No evidence was presented specifically on this subject. Father's personal situation and home is more organized which implies better ability to address this section.

d. Sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child 'has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community.

The child has primarily lived with the mother. However, the home environment of the father appears more stable. Each parent (and presumably the child if they have custody) lives with their own parents and siblings. Thus, the extended family of each is a significant factor in this case. The extended family of the father exhibits more stability as does the father as compared to the mother. This factor favors the father.

The child is young enough that a change of primary caretaker at this point should not be an issue.

e. Willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.

The mother's position is that she is the mother and thus entitled to call all the shots. The incident relating to attempting to restrict visitation based upon sketchy information emphasizes that point.

On the other hand, the father is more rigid and would want to set all the guidelines for the child even when not in his custody.

It appears that this situation by both parties will continue.

Neither party is favored.

f. The moral fitness of the parents.

Neither party is perfect but neither is unfit. This is not a deciding factor.

g. The mental and physical health of the parents.

This is not an issue.

h. The home, school, and community record of the child.

The child is too young to have developed an independent record.

i. The reasonable preference of the child, if the Court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

The child is too young to express.

j. The evidence of domestic violence.

This is not an issue.

k. The interaction and interrelationship or the potential for interaction and interrelationship of the children with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interest (and that person's history of abuse, etc.).

Each parent lives in a home with their parents, siblings, and others. No evidence of adverse consequences nor dangerous persons in their respective homes was shown.

l. The making of false allegations not in good faith by one parent against

the other of harm to the child as defined in Section 50-25.1-02.

The mother made such a claim which was subject to an interim hearing and proven unsupported.

The Court is suspicious of facts and motives by the mother but cannot make a finding that this factor is relevant.

m. Any other factors considered by the Court to be relevant to a particular child custody dispute.

None.

The totality of the factors favor custody with the father.

[¶ 6] The district court issued its judgment, awarding "primary custody" of the child to Sorenson, subject to Slater's right to "reasonable visitation." The district court did not address Slater's parental rights and responsibilities in the judgment.

## II.

[¶ 7] This Court's standard of review of a custody determination is well-established:

We exercise a limited review of child custody awards. A district court's decisions on child custody, including an initial award of custody, are treated as findings of fact and will not be set aside on appeal unless clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made. Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result. A choice between two per-missible views of the weight of the evidence is not clearly erroneous, and our deferential review is especially applicable for a difficult child custody decision involving two fit parents.

*Hartleib v. Simes,* 2009 ND 205, ¶ 24, 776 N.W.2d 217 (quoting *Koble v. Koble,* 2008 ND 11, ¶ 6, 743 N.W.2d 797). "On appeal, the complaining party bears the burden of proving a finding of fact is clearly erroneous." *Id.* (citing *Frueh v. Frueh,* 2009 ND 155, ¶ 16, 771 N.W.2d 593; *Koble,* at ¶ 6).

[¶ 8] Some of the district court's findings are not in accord with the record. With regard to factor b, the district court found, "Both have the ability to assure the child's necessities. The father's home is shown to be a safe environment. No evidence was presented regarding the mother's home. This factor slightly favors the father." This finding is clearly erroneous, as Slater, her mother, and her sisters testified regarding the condition and safety features of Slater's home. Similarly, on factor c, the district court found "[n]o evidence was presented" regarding the child's development. This finding is clearly erroneous, as Slater testified about the child's development with regard to talking, numbers and colors.

[¶ 9] The district court found, "Father's personal situation and home is more organized which implies better ability to address" the child's development. The district court also found, "[T]he home environment of the father appears more stable. . . . The extended family of the father exhibits more stability as does the father as compared to the mother." We are uncertain as to what the district court meant when it found Sorenson was more "organized" or "stable" than Slater. The district court's findings do not properly explain the court's rationale. The district court's rationale is especially unclear, given it failed to acknowledge the testimony it

received concerning some of the best interests factors.

[¶ 10] Rule 52(a), N.D.R.Civ.P., requires the district court to "find the facts specially." We have stated, "The purpose of the rule is to enable the appellate court to obtain a correct understanding of the factual issues determined by the trial court as a basis for its conclusions of law and judgment." *Koller v. Koller*, 377 N.W.2d 130, 131 (N.D.1985) (citing *DeForest v. DeForest*, 228 N.W.2d 919 (N.D.1975)). We have explained further, "The trial court's findings must be sufficiently specific and detailed to apprise a reviewing court of the reasoning and rationale for the decision. When the court's findings do not disclose the basis for the court's conclusions of law and decision, we cannot properly perform our appellate court function." *Berg v. Berg*, 2000 ND 36, ¶ 10, 606 N.W.2d 895 (internal citations and quotations omitted). In previous cases, we have concluded sparse findings were "minimally sufficient" when they "enable this [C]ourt to understand the rationale behind the court's" decision. *Koller*, 377 N.W.2d at 131; *see also Voth v. Voth*, 305 N.W.2d 656, 659 (N.D.1981) (findings were "minimumly adequate" when the Court could "understand what the trial court intended with respect to each of the [best interests] factors"). That is not the case here. The district court's findings are sparse and conclusory and do not allow this Court to properly perform its appellate function. On remand, the district court must make more specific findings, clearly explaining its rationale. *See Owan v. Owan*, 1997 ND 50, ¶ 11, 560 N.W.2d 900 (remanding to the district court to make specific findings regarding domestic violence).

[¶ 11] The district court applied the amended version of the best interests factors found in N.D.C.C. § 14–09–06.2 when making its findings. *See* 2009 N.D. Sess. Laws ch. 149, § 5 (amending N.D.C.C. § 14–09–06.2). The petition in this case was filed on May 20, 2008, and trial was held on July 27, 2009. The amended version of N.D.C.C. ch. 14–09 became effective on August 1, 2009. The best interests factors changed substantively as a result of the amendment. *See id.* The district court should have applied the prior version of the best interests factors. *See Freed v. Freed*, 454 N.W.2d 516, 518 n. 1 (N.D.1990) ("Because the action in the instant case commenced before the effective date of the legislative amendments, we apply the former version of the statute.") (citing *State v. Rohrich*, 450 N.W.2d 774, 775–76 n. 1 (N.D.1990); *Riverview Place, Inc. v. Cass County*, 448 N.W.2d 635, 638 n. 2 (N.D. 1989)).

### III.

[¶ 12] The district court's judgment does not address Slater's parental rights and responsibilities, although Sorenson's proposed parenting plan described the parents' rights and responsibilities. Slater did not submit a parenting plan. *See* N.D.C.C. § 14–09–30(1) (2009) (requiring both parents to file a parenting plan). The amended version of N.D.C.C. ch. 14–09 includes the following parental rights and responsibilities:

a. Right to access and obtain copies of the child's educational, medical, dental, religious, insurance, and other records or information.

b. Right to attend educational conferences concerning the child. This right does not require any school to hold a separate conference with each parent.

c. Right to reasonable access to the child by written, telephonic, and electronic means.

d. Duty to inform the other parent as soon as reasonably possible of a ser-

ious accident or serious illness for which the child receives health care treatment. The parent shall provide to the other parent a description of the serious accident or serious illness, the time of the serious accident or serious illness, and the name and location of the treating health care provider.

e. Duty to immediately inform the other parent of residential telephone numbers and address, and any changes to the same.

f. Duty to keep the other parent informed of the name and address of the school the child attends.

N.D.C.C. § 14–09–32(1) (2009). These rights and responsibilities were previously found in N.D.C.C. § 14–09–28, under the heading "Parental custody and visitation rights and duties." *See* 2009 N.D. Sess. Laws ch. 149, §§ 4, 12 (establishing N.D.C.C. § 14–09–32 and repealing N.D.C.C. § 14–09–28). The amendment to N.D.C.C. ch. 14–09 transferred the rights and responsibilities to N.D.C.C. § 14–09–32, without changing their substance. *Id.* Section 14–09–32(2), N.D.C.C., requires district courts to include these rights and duties "in an order establishing or modifying parental rights and responsibilities," although some of these rights and responsibilities may be restricted or excluded. *See also* N.D.C.C. § 14–09–28(2) (2007) (including a similar requirement). On remand, the district court must include Slater's parental rights and responsibilities in its judgment.

### IV.

[¶ 13] Slater has requested this Court award her attorney's fees. She has provided no legal basis for her request. This is not a proceeding for divorce under N.D.C.C. ch. 14–05. The district court made no finding of a false allegation of domestic violence or willful and persistent denial of visitation rights. *See* N.D.C.C. §§ 14–09–06.5, 14–09–24 (requiring district courts to award attorney's fees in such cases). We therefore decline to award Slater attorney's fees.

### V.

[¶ 14] We have reviewed Slater's other arguments and we find them to be either without merit or unnecessary to our decision. We reverse and remand to the district court for further findings consistent with this opinion.

[¶ 15] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 16] As declared by statute, there is no presumption that a child goes to the mother or the father. *See* N.D.C.C. § 14–09–29. We must not lose sight of this public policy of the State of North Dakota.

[¶ 17] The attorney for the father pointed out at oral argument that in another case with the same judge, in which he was the attorney for the father, this Court affirmed the custody award to the mother on findings as sparse as those the majority says are insufficient in this case. In that case, *Hanisch v. Osvold,* in which the mother had attempted suicide five times and had a history of alcohol abuse, the trial court said:

The Court is convinced from the testimony of therapist Liz Larson, from Denise, and the other witnesses that the mental health issues which originally caused the temporary placement of the child with the father, Ryan, are no longer an issue.

Therefore, the Court will review the facts based upon the best interests of the child.

a. The Defendant, Denise, clearly articulated her love, affection, and emotional ties with the child and the child's apparent reactions to her and the child's sibling who lives with them in the home.

Although it is clear that the Plaintiff likewise has great affection and love for the child, it is the Court's opinion that this factor slightly favors Denise.

b. The capacity and disposition of Denise to give love, affection also slightly favors Denise.

c. The parents both are disposed to feed, clothe, and care for the medical needs of the child. The mother appears slightly more inclined to believe these activities are her calling rather than an obligation. She seems more inclined to notice the welling-being [sic] of the child.

d. The Plaintiff has provided a stable home since December 2006. The Defendant provided the home prior to that.

I don't find an advantage for either parent relating to this factor.

e. Each parent offers a permanent family unit for the child. The mother offers the more traditional family unit, however.

f. Moral fitness is not an issue in this case.

g. Mental or physical health is not a current issue. If the mother has custody, she must remember her vulnerabilities, however.

This item slightly favors the Plaintiff.

h. Home, school, and community records are not an issue.

i. The child is too young to express preference in this case.

j. Domestic violence is not an issue.

k. The Plaintiff has a good extended family which affects the best interests of the child. Likewise, the Defendant has a good extended family, including a fiancé, which affects the best interests of the child.

Overall, the Court determines that placement of the child with the mother, Denise, would be in the child's best interests, subject to significant and regular visitation with the Plaintiff, Ryan, and his extended family.

In that case of *Hanisch v. Osvold*, 2008 ND 214, 758 N.W.2d 421, even though there was contrary evidence in the record, this Court affirmed because there was evidence in the record to support the trial court's findings. This Court said:

Hanisch argues the district court erred in awarding custody of the child to Osvold. "A district court's award of custody is treated as a finding of fact and, on appeal, will not be reversed unless it is clearly erroneous under N.D.R.Civ.P. 52(a)." *Wessman v. Wessman*, 2008 ND 62, ¶ 12, 747 N.W.2d 85. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made." *Burns v. Burns*, 2007 ND 134, ¶ 9, 737 N.W.2d 243 (quoting *Gietzen v. Gabel*, 2006 ND 153, ¶ 6, 718 N.W.2d 552). *"Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result."* *Jelsing v. Peterson*, 2007 ND 41, ¶ 11, 729 N.W.2d 157. This is particularly relevant "for a difficult child custody decision involving two fit parents." *Id.*

*Id.* at ¶ 4 (emphasis added). In this case, the father's brief recites at length the tes-

timony that supports the trial court's findings.

[¶ 18] This case was tried before the changes in the custody factors in N.D.C.C. § 14–09–06.2 became effective, and the findings were issued after they became effective. The majority criticizes the trial court for applying the "wrong" law. But that is not an issue raised by the mother in either her main or reply brief. In her briefs, custody factors she cites in their entirety are from the "new" law. The majority asserts that the custody factors were "changed substantially" by the amendments. The legislative history reflects: "While maintaining the general structure of the best interest analysis and most of the substance, several factors were clarified and new factors were added." *Hearing on S.B.2042 Before the Senate Judiciary Comm.*, 61st N.D. Legis. Sess. (January 19, 2009) (testimony of Sherry Mills Moore on behalf of the State Bar Association of North Dakota). At oral argument, the mother could not identify a single change in the factors that would make a difference in this case. Neither has the majority.

[¶ 19] The majority says, at ¶ 4, "it appears the scheduling conference was not conducted on the record." There is nothing in the record that supports this statement. It is true that on appeal there is no transcript, but what the record reflects is that the mother did not order the transcript of the scheduling conference. The appellant assumes the consequences and the risk for the failure to file a complete transcript. *See Sabot v. Fargo Women's Health Organization*, 500 N.W.2d 889, 891–92 (N.D.1993). The scheduling conference may have resulted in an agreement of the parties as to what would happen if the written decision were issued after the effective date of the amendments.

[¶ 20] There are the statements by the trial court that there was "no evidence" on certain points. The mother argues that certain testimony was "evidence" relating to those points. If what the court meant was that there was "no credible evidence" or "no persuasive evidence" on those points, it would have been better for it to have said so. But this court has repeatedly differentiated between recitation of evidence and findings of fact. *See, e.g., Interest of T.J.K.*, 1999 ND 152, ¶ 13, 598 N.W.2d 781 ("The mere recitation of testimony is not equivalent to a finding of fact.").

[¶ 21] In view of the extraordinary deference given to a trial court when it ruled for the mother in a custody dispute in *Morton County Social Service Board v. Cramer*, 2010 ND 58, 780 N.W.2d 688, it is difficult to understand why that deference is not replicated here in the award of custody to the father.

[¶ 22] DALE V. SANDSTROM